## CHARLES J. BONAPARTE vs. MARY WISEMAN.

*Injury to Property by Excavation on Adjoining Lot—Notice to Owner—Lateral Support of Soil—Independent Contractor—Negligence.*

One who causes an excavation to be made on his own lot of ground, although by an independent contractor, is liable for injury thereby caused to the house of an adjoining lot owner when such injury might reasonably have been anticipated as a probable consequence of the excavation and when no notice has been given to the adjoining lot owner to protect his property. The question whether such injury was a probable consequence of the excavation is a question of fact for the jury.

If a person who is about to excavate his own lot in proximity to the wall of an adjoining house and below its foundations, gives reasonable notice thereof to the adjoining owner, the latter is bound to protect his own property and the former is not liable for damages sustained, if the excavation is made with ordinary care.

The demolition of houses on a city lot and the excavation of the soil a few inches below the surface along the division line of the house of an adjoining owner, when nothing further is done for more than two months, is not in itself, notice to the adjoining owner of the character and extent of the excavation which is afterwards made and which injured the foundation of the adjoining house.

A party who employs an independent contractor to do certain work, without reserving any control over it, is not liable for injuries resulting from the negligence of the independent contractor or of his servants in doing the work. But when the resulting injury is one that might have been anticipated as the probable consequence of the work directed to be done, then the employer of such independent conrtactor is liable therefor.

Appeal from a judgment of the Court of Common Pleas of Baltimore City (HARLAN, C. J.)   The defendant's fourth and seventh prayers which were rejected are set forth in the opinion of the Court.   His other prayers, which were granted, were as follows :

*Defendant's 1st Prayer.*—If the jury find from the evidence that a reasonable time before the witness, Anderson, commenced to dig under the foundation wall of the defendant's house next to the premises No. 815 King street on the east, but separated from it by an alley about two feet six inches wide, the defendant notified the plaintiff of his intention to do so ; and shall further find that afterwards the said Anderson did dig under the said foundation wall upon the defendant's ground, and in so doing exercised reasonable care to prevent the ground under the bed of the said alley from caving in, then the plaintiff is not entitled to recover, although the jury shall believe that the east and south walls of the plaintiff's house, or either of them, settled and cracked by reason of the excavation made by the said Anderson.   (*Granted*).

*Defendant's 2nd Prayer.*—If the jury believe from the evidence that the east and south walls of the house known as No. 815 King street were in a bad condition before the commencement of the digging by the witness, Anderson, under the foundation wall of the defendant's house, and that the settling and cracking thereof were caused by their own inherent defects, and not by the digging by the defendant of his cellar in the year 1894, then the plaintiff is not entitled to recover for any injury to her property caused by such settling and cracking.   (*Granted*).

*Defendant's 3rd Prayer.*—If the jury shall believe that the house No. 815 King street was in a ruinous or dilapidated condition before the witness, Anderson, commenced work upon the premises of the defendant adjoining it on the east, and shall not find that by reason of such work it became more ruinous and dilapidated to an extent which impaired its rental value, then under the pleadings, and all the proof

in the cause, the plaintiff cannot recover, and their verdict must be for the defendant.   (*Granted*).

*Defendant's 5th Prayer.*—If the jury shall find that the work done upon the defendant's premises by which the house, known as " No. 815 King street," is alleged to have been injured was done by the witness, Anderson, under the written contract offered in evidence, and shall further find that a reasonable time before any excavation below the foundation of said house was made, either the plaintiff or Theodore Seigwart were notified, or had actual knowledge that such excavation was about to be made, then, under the pleadings and all the evidence in the cause, their verdict must be for the defendant.   (*Granted*).

*Defendant's 6th Prayer.*—The jury are instructed that there is no evidence in this cause which would justify them in awarding exemplary or vindictive damages, and that the plaintiff is not entitled to recover for injuries to the interests of the reversions in the property alleged to have been damaged, nor for the failure of her tenants to pay rent in accordance with their contracts, nor for any loss of rent or diminution of rental value due to depreciation of the property by reason of gradual wear and tear, of failure to keep the same in repair on her part ; and, inasmuch, as it appears from the uncontradicted evidence offered by the plaintiff that she is over 88 years of age, and there is no evidence in the cause of any other loss or damage suffered by her than loss of rent, the plaintiff can, at most, recover the amount of any rent which she may have been proven to have lost between the 14th day of March, 1894, and the time of trial, and in addition thereto whatever they may find to be the present value to her of whatever rent, if any, they may find that she will lose during the remainder of her life, insofar as such part or prospective loss to her may be due to the acts complained of in the plaintiff's declaration and not otherwise.   (*Granted*).

The jury returned a verdict for the plaintiff for $600.

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, ROBERTS, PEARCE and SCHMUCKER, JJ.

*William Reynolds,* for the appellant.

It is neither alleged in the pleadings, nor is there any evidence in the cause tending to prove that the plaintiff ever acquired by grant or otherwise, any easement in the defendant's land of lateral support to the *buildings* erected upon her lot.   Since the decision of the House of Lords in 1881 of the case of *Dalton* v. *Angus,* L. R., 6 App. Cas. 740, it has been settled that such an easement of lateral support for a building twenty years old may now be acquired by prescription *in England,* but this doctrine, like the analogous one of ancient lights, has been very generally repudiated by the Courts of this country.  See *Tunstall* v. *Christian,* 80 Va. 1 ; *Sullivan* v. *Zeiner,* 98 Cal. 346 ; *Handlan* v. *McManus,* 42 Mo. App. 551.

The reasoning upon which the American Courts have refused to admit this doctrine is generally upon the same line as that taken by LORD C. J. COCKBURN in his masterly opinion in the case of *Angus* v. *Dalton,* in the Court of Queen's Bench, L. R. 3 Q. B. Div., 116, 117, and which had also been previously adopted by this Court in the case of *Cherry* v. *Stein,* 11 Md. 21, in deciding that the English doctrine of ancient lights was not applicable in this State. (See also *Garrett* v. *Janes,* 65 Md. 260).   The plaintiff's case rests therefore wholly upon her common law rights to hold the defendant liable for any injury which can be shown to have been sustained by her and to be fairly attributable to negligence or want of due care on his part in excavating his own land below her foundations.

From the uncontradicted evidence as well as from the special finding of the jury in answer to the first interrogatory, it appears that the digging complained of was done by an independent contractor, one Joshua Anderson.   It is well settled law that an employer is *prima facie* exempt from responsibility for the consequences of negligence on the part

of an independent contractor or one of the latter's servants ; *Deford* v. *State, use Keyser,* 30 Md. 179 ; *City & Sub. Ry. Co.* v. *Moore,* 80 Md. 348 ; *Engel* v. *Eureka Club,* 137 N. Y. 100. It is no less well settled that this doctrine applies to injuries caused to neighboring buildings by excavations on the employer's land ; *Gayford* v *Nicholls,* 9 Exch. 702 ; *Myers* v. *Hobbs,* 57 Ala. 175 ; *Astcn* v. *Nolan,* 63 Cal. 269.

Was the defendant bound personally to give notice of his intention to excavate in this case ? Two facts must be borne in mind in discussing this question, namely : (*a.*) The ·defendant was digging ·on *his own* land, and *two and a-half feet* from the nearest wall of the plaintiff, and—(*b.*) The injury complained of is· to the plaintiff's *house,* not to her land *in its natural state.*

It is respectfully submitted that in such a case as this there is no legal obligation on the landowner's part to give notice of his intention to excavate ; *at most* a failure to give such notice may be evidence of *negligence* on the part *of the person doing the work.* The idea that such an obligation exists seems to have arisen from a *dictum* of CHANCELLOR WALWORTH in *Lasala* v. *Holbrook,* 4 Paige, ch. 169. In dissolving an injunction against excavating previously granted in that case, the Chancellor said, *obiter :* " From the recent English decisions it appears that the party who is about to endanger the building of his neighbor by a reasonable improvement on his own land is bound to give the owner of the adjacent lot proper notice of the intended improvement, and to use ordinary skill in conducting the same ; and that it is the duty of the latter to shore or prop up his own building so as to render it secure in the meantime."

But, this remark, which was wholly irrelevant to the decision of the case before him, altogether misstates the law of England on this subject. · The rule adopted in the English Courts was declared in the case of *Chadwick* v. *Trower,* 6 Bing. N. C., 1, decided in the Exchequer Chamber in 1839, reversing the Court of Common Pleas for overruling a demurrer to a count in the declaration which, after stating that the defen-

dant, being about to pull down the vaults and walls upon his own premises adjoining the building of the plaintiff's, alleged it to have been the duty of the defendant *to give notice to the plaintiffs of his intention to pull down*, and then alleged as a breach of such duty, that the defendant pulled down his vaults and walls without giving the plaintiffs notice of his intention.    PARKE, B., remarked : " The duty of giving notice in such cases, seems to be one of those duties of imperfect obligation which are not enforced by the law."

JUDGE SCUDDER, in delivering the opinion of the Court of Errors and Appeals of New Jersey in the recent case of *Schultz* v *Byers*, 53 N. J. L. 442, after reviewing all the English cases, says :   '' There are no later cases that I have found in the English Courts which change the rule given in *Chadwick* v. *Trower*, and that is therefore supposed to be the present law in England relating to this subject.''

The better doctrine would appear to be that laid down in *Spohn* v. *Dives*, 174 Pa. St. 474, which is strictly in line with *Shafer* v. *Wilson*, 44 Md. 268, and indeed, with all the previous decisions, except, perhaps, *Schultz* v. *Byers*, and is to this effect, that the giving of notice is not a positive duty imposed by law upon the owner of the land upon which the excavation is made, but simply a reasonable precaution which, if taken by the person making the excavation, will relieve him from an obligation which would otherwise be cast upon him to do that for the safety of the adjoining wall which its owner, following the usual and ordinary methods employed for such purposes, might have done. The harsher rule laid down in *Schultz* v. *Byers* amounts to this, that excavating on one's own land beside the foundation of a neighbor's house *without his knowledge* is in itself *evidence of carelessness* in the execution of the work.    Applying *either* rule to the case at bar, it is obvious that a failure to give timely notice to the plaintiff can be held to have been *at most* evidence of negligence *in the execution of* the work, that is to say, on the part *of the independent contractor* for which *he* and *not* the defendant must be held liable.

The appellant also contends that, even if this doctrine be denied, the Court should not have submitted the case to the jury, because it appears from *the plaintiff's own evidence*, and especially from the testimony of one Theodore Seigwart, her son-in-law, who was also her collector and general agent, that *at least three months* before the digging which it is claimed injured her property, she, or he, as her agent, had actual knowledge that the defendant was about to make the excavations which he afterwards made, and to dig the foundation of his new building three or four feet deeper than those of the plaintiff's house; and that such *actual knowledge* on the plaintiff's part dispensed with any necessity for giving her formal notice, and therefore the defendant's seventh prayer, taking the case from the jury on this ground, should have been granted. It is said in *Schultz* v. *Byers, supra,* " Where it can be shown that such owner had knowledge of the improvement that was about to be made, it would not be necessary to prove a formal notice given to him." To the same effect are the cases of *Shrieve* v. *Stokes,* 47 Ky. (8 B. Mon.) 453; *S. C.* 48 Amer. Dec. 401; *Bohren* v. *Dunhart Harness Co.,* 49 N. E. Rep. 296, 299; *Novotsky* v. *Danfort,* 9 So. Dak. 301.

*William Colton* (with whom was *Chas. A. Briscoe* on the brief, for the appellee), cited:

*Shafer* v. *Wilson,* 44 Md. 268; *Shultz* v. *Byers,* 53 N. J. L. 442; *Beard* v. *Murphy,* 37 Vt. 101; *Deford* v. *State,* 30 Md. 179; *Bower* v. *Peate,* L. R. 1 Q. B. D. 321; *Dalton* v. *Angus,* 6 App. Cas. 740; *Hughes* v. *Percival,* App. Cas. [1893] 443; *Ry. Co.* v. *Morey,* 47 Ohio St. 207; *Steven son* v. *Wallace,* 27 Grattan, 77; *Hughes* v. *Ry. Co.,* 39 Ohio St. 476; *Woodman* v. *Met. R. Co.,* 149 Mass. 345; *Ry. Co.* v. *Reaney,* 42 Md. 117.

SCHMUCKER, J., delivered the opinion of the Court.

This suit was instituted by the appellee, who is life-tenant of the house and lot No. 815 King street, in Baltimore City, to recover damages for injury to her house resulting from

an excavation made by the appellant on the adjoining lots, Nos. 811 and 813 King street, for the purpose of erecting a warehouse thereon. All three lots were originally improved by dwellings. The house of the appellee was separated from those of the appellant by an alley two and a-half feet wide, which lay almost entirely upon the land of the latter, but was used by both parties in common.

The appellant, desiring to erect a warehouse upon his two lots, made a contract with one Anderson, a competent builder, to tear down the houses on the lots and erect thereon a warehouse. In the latter part of 1893 Anderson tore down the two old houses to the level of a few inches below the ground and also excavated a portion of the rear of the lots behind where the houses had stood and adjacent to the unimproved part of the appellee's lot. He did nothing further to the property until about the middle of March, 1894, when he took out the foundations of the old house next to that of the appellee and excavated for new foundations to a depth of three or four feet below the foundations of her house, which settled and was injured. There was evidence tending to show that the excavation was the cause of the injury to the house, and also evidence tending to show that the appellee did not have previous notice or knowledge of the appellant's intention to excavate below the level of her foundations.

At the request of the appellant the jury were required, in pursuance of the Act of 1894, ch. 185, to find specially upon the following interrogatories, to each of which they answered " No." " Was the plaintiff, or her representative, Theodore Seigwart, notified of the intended digging below the foundation wall a reasonable time before the said digging below the foundation was begun ? "

" Did the plaintiff or her representative, Theodore Seigwart, have actual knowledge of the defendant's intention to excavate below her foundation a reasonable time before such excavation was begun ? "

The general verdict and judgment were against the defendant and he took this appeal.

The appellant offered seven prayers, all of which were granted except the fourth and seventh. The seventh prayer will be first considered by us. This prayer is based upon the assumption that it appeared from the plaintiff's own evidence that she had knowledge in December, 1893, or at latest in January, 1894, of the *character* and *extent* of the work about to be done and its proximity to the easternmost wall of her house and took no precautions for its protection. We think the Court below properly refused to grant this prayer, because, while the record shows that the appellant's contractor, Anderson, demolished the two old buildings on his lots during the time extending from September until December, 1893, and excavated for new foundations along the division line in the rear of the appellee's house, it also shows that he then ceased work entirely and allowed the property to remain in the condition in which it was at that time for more than two months. The work done by the appellant's contractor, was of course, open to the observation of the appellee or the occupants of her house and doubtless led them to infer that the appellant was getting ready to improve his lots and the fact appearing from evidence, that he owned a warehouse at the rear of these lots, fronting on Pratt street, may have led them to further infer that he intended to build on the lots an addition to his warehouse, but it was asking too much of the Court to request it to direct the jury to assume from the evidence that the *character* and *extent* of the work about to be done by the appellant was apparent to the appellee or her agent in December, 1893, or January, 1894. The wisdom of the Court in refusing to grant this prayer was fully confirmed by the fact that the jury returned a negative answer to the interrogatories requiring them to pass specially upon the question of the possession of such knowledge by the appellee or her agent.

The appellant's fourth prayer asserts the broad proposition

that the appellant was not liable for the injury to the appellee's house by the excavation on his lots, because the work was done by Anderson as an independent contractor under the written agreement appearing in the record.

The question of the extent to which the employment of an independent contractor to do work, which is placed entirely under his control, will relieve the employer from liability for injuries resulting to third persons has been much discussed by the Courts. The general principle broadly stated is that when the work is done by a competent contractor under an agreement which gives him complete control of the work and of the persons employed by him to do it, such persons will be his servants and not those of the employer and the latter will not be liable for injuries caused by the negligence of the workmen, because they are not his servants and are not under his control. But this doctrine has been repeatedly held not to relieve an employer from all responsibility of every kind for the consequences of defective or unskillful work done on his premises even by the servants of an independent contractor. In the case of *Deford* v. *State, use of Keyser*, 30 Md. 179, CHIEF JUDGE ALVEY, in an able and elaborate opinion reviews the leading cases upon this subject, quoting at length from the opinions of the learned Judges who decided them, and comes to the conclusion that the distinction is well established between the cases in which, when work is being done under a contract, an injury is caused by negligence *in a matter collateral to the contract and* those in which *the thing contracted to be done* causes the mischief. In the former class of cases the employer is not liable for the injury but in the latter he is.

In the case of the *Ohio Southern R. R. Co.* v. *Morey*, 47 Ohio St. 207, the Court say : " One who causes work to be done is not liable ordinarily for injuries that result from carelessness in its performance by the employee of an independent contractor to whom he has left the work without reserving for himself any control of an execution of it. But this principle has no application where the resulting injury

instead of being collateral and following from the negligent act of the employee alone, is one that might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of its performance.   In such case the person causing the work to be done will be liable, though the negligence is that of any employee of an independent contractor."   In the same case, at p. 214, the Court say: " It is equally clear that the law devolves upon every one about to cause something to be done which will probably be injurious to third persons, the duty of providing that reasonable care shall be taken to obviate its probable consequences.   In this class of cases the doctrine of *respondeat superior* has no application; his liability is based upon the principle that he cannot set in motion causes dangerous to the person or property of others without taking all reasonable precautions to anticipate, obviate and prevent this probable consequence."   The same doctrine has been announced by this Court in the recent case of the *City & Suburban R. R. Co.* v. *Moores*, 80 Md. 352, where the opinion says: " Even if the relation of principal and agent or master and servant do not strictly speaking exist, yet the person for whom the work is done may still be liable if the injury is such as might have been anticipated by him as a probable consequence of the work let out to the contractor, or if it be of such character as must result in creating a nuisance, or if he owes a duty to third persons or the public in the execution of it."

Under these authorities the appellant would have been liable for injury happening to the house of the appellee from the excavation of his lots if it might reasonably have been anticipated that such injury would probably occur as a consequence of an excavation made in the location and to the depth appearing from the evidence in this case.   The question as to whether such injury might reasonably have been anticipated as a probable consequence of the excavation was a question of fact for the jury, which would have

been taken away from them if the appellant's fourth prayer had been granted.

There remains to be considered the further question, did the appellant owe to the appellee the duty of giving her notice of his intention to excavate in near proximity to her wall, a reasonable time in advance of commencing the work, in order to afford her an opportunity to take suitable precautions for the protection of her foundations? In the argument of the case the appellant's counsel earnestly contended that he did not owe any such duty, and the appellee's counsel contended with like earnestness that he did. The cases are not uniform upon the subject of the duty of a person, who is about to excavate his own lot adjacent to·another's house and below the level of its foundations, to give such notice, and it cannot be said that there is an imperative obligation to give it. The obligation to give the notice, like that to see that the excavation is made with due care, seem both to rest upon the recognized proposition that a party in possession of fixed property must take care that it is so used and managed that other persons shall not be injured, whether it be managed by his own servants or contractors or their servants. If one about to excavate his own lot do it or cause it to be done so carefully as not to injure the adjacent houses he need not give notice to their owners; if, on the other hand, he give timely notice to the adjacent owners the burden will be thrown upon them to protect their own property and he will not be liable for damages sustained by them if he makes the excavation with reasonable and ordinary care.

In the case of *Shafer* v. *Wilson*, 44 Md. 280, the Court say : " There seems to be no doubt that an adjacent owner of land has no right to deprive his neighbor of the natural support afforded by his soil. The authorities are somewhat conflicting as to the extent of the right of the owner of any adjacent ground built upon to improve his own property, where he is under no disability (from grant of easement, prescriptive right or necessity), to restrict him,

24        BONAPARTE vs. WISEMAN.

although it may operate to injure his neighbor's property. But it is agreed on all sides, that his right, whatever that may be, *must be exercised with due care and skill at his peril*, to prevent injury to the adjacent owner." In the same case, at p. 281, the Court, in discussing the duty of the party about to make such excavation to give timely notice of his purpose to the adjacent owner, say, "Such notice would seem to be a reasonable precaution in a populous city, where buildings are necessarily required to be contiguous to each other, and improvements made by one proprietor, however skilfully conducted, may be attended with accidental and disastrous results to his neighbors, who ought to have an opportunity to take the steps necessary to protect themselves and their property." In support of these views the Court cite *La Sala* v. *Holbrook*, 4 Paige Ch. 169; *Kent's Commentaries*, vol. 3, p. 532; *Washburn on Easements*, p. 435, &c.

The law as laid down by the cases we have cited does not permit the owner of a lot of ground in a populous city like Baltimore to make an excavation, even through an independent contractor, upon his lot in near proximity to his neighbor's house, and to a depth of some feet below the level of the foundations of that house and be under no obligations either to see that the contractor in doing the work protects the neighbor's wall by the exercise of due care, or to give the neighbor timely notice of the nature and extent of the intended excavation, that he may take due precautions for the protection of his own wall.

The appellant's fourth prayer ignored the obligation on his part either to see that the work on his lots was done with due care or to give timely notice to the appellee of his intention to have the work done, and treated the employment of Anderson to do the work, under a written contract, as being all that was required of him in the premises. The prayer was therefore properly rejected.

The judgment will be affirmed with costs.

*Judgment affirmed.*

(Decided March 14th, 1899).