# REBECCA SAMUEL et al. vs. FRANK NOVAK et al.

*Injury to Building by Excavation on Adjoining Lot—Instructions to the Jury—Independent Contractor—No Recovery in Action of Tort for Breach of Contract.*

An excavation for the foundation of a building was being made on a lot adjoining plaintiffs' house when the plaintiffs were notified by the adjoining owner that they should protect their building by underpinning, etc. Thereupon plaintiffs made a contract with the builder who was making the excavation to underpin their house. This work was not begun until three days thereafter and before it was completed the walls of plaintiffs' house fell. In an action of tort against the builder and the owner of the adjoining lot alleging negligence in making the excavation. *Held*, that no recovery can be had against the builder in this action for breach of his contract to protect plaintiffs' property, if that was the cause of the injury.

*Held*, further, that it was error to instruct the jury that their verdict must be for the other defendant, the owner of the adjoinining lot, on the ground that the excavation on his lot was wholly committed to an independent contractor and the injury to plaintiffs' house was not reasonably to have been anticipated as the probable consequence of the excavation but was caused by the negligence of the independent contractor; that inasmuch as the proof shows that defendants' contract with the builder called for an excavation below the walls of plaintiffs' house, the question whether injury thereto ought reasonably to have been anticipated was a question of fact which should have been submitted to the jury, such excavation not being a matter collateral to the contract with the builder, and that this prayer was also defective in withdrawing from the finding of the jury the question of fact as to what caused the injury to plaintiffs' house.

Appeal from Baltimore City Court (DENNIS, J.)

*Defendant Novak's Prayer.*—That by the theory of the plaintiffs' case the injury to their property was occasioned by the failure of the said defendant to properly perform a contract entered into between the plaintiffs and said Novak, for the protection of their property, that the declaration in this case is in tort, and therefore the verdict of the jury must be for the defendant, Novak. (*Granted.*)

*Defendant Schlutter's Prayer.*—The verdict must be for the

defendant, Dora J. Schlutter, because it appears from the plaintiffs' case that the work of excavation on the defendants' lot was wholly committed by her to an independent contractor; that the injury to the plaintiffs' house was not reasonably to have been anticipated as the probably consequence of the excavation, but was caused by the negligence of the independent contractor. (*Granted.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*Myer Rosenbush*, for the appellants.

Up to the very hour when the building fell, the plaintiffs not only had not received any notice whatsoever of any intention to excavate below their foundation wall, but had received no notice that such excavation had actually been made; the attempt under cross-examination to prove notice merely discloses the fact that plaintiffs were informed by defendant Schlutter prior to the fall of their building that defendant Schlutter's building had been condemned, but there is absolutely nothing in the record to show that plaintiffs knew that defendant Schlutter intended to excavate below the foundation of plaintiffs' wall, or the nature and extent of the *intended* excavation, and such knowledge does not measure up to the requirement as to notice, laid down by this Court in the case of *Bonaparte* v. *Wiseman*, 89 Md. 20.

The testimony discloses the fact that the south wall of the plaintiffs' property was partly a 4-inch and partly a 9-inch wall, that the wall had an inward bulge of about 5 inches at or about the second floor joists; the nature and character of the wall must necessarily have become obvious to those tearing down the Schlutter wall, by the time they reached the second floor joists; what precautions, if any, were then taken "to protect the neighbor's wall?" The testimony shows clearly that absolutely nothing was done to protect plaintiff 's wall until Tuesday, May 20th, 1902, when they saw that a narrow board had been placed against the middle

of the plaintiff's wall, and extended midway across the Schlutter lot; in other words, without notice of *their intention* to excavate below foundation of plaintiffs' wall, the adjoining property was completely torn down and foundation trenches dug to a depth of at least 5 inches below the bottom, and while in process of tearing down it manifestly became obvious to those doing the work that the plalntiffs' wall was not a good wall, still defendants continued to tear down without any notice, or without any precautions whatsoever being taken "to protect the neighbor's wall."

The mere fact of placing the one brace clearly demonstrates that the defendants knew that bracing that wall was necessary, and that they realized the duty they owed their neighbor and the testimony of three experienced and competent builders, just as clearly shows that the manner of placing that one brace was unskillful, improper, unworkmanlike and ineffective; the testimony further shows that the ground there is all filled ground, and that doing work on such ground requires additional precaution.

The entire Schlutter lot was cleared, and a trench for the foundation of the building dug immediately adjacent to, and at least 5 inches below, the bottom of the plaintiffs' wall, before the defendants notified the plaintiffs on Friday, May 16th, 1902, that underpinning was necessary.     No precautions whatever were taken to protect plaintiffs' property from injury, and the wall was allowed to remain in that entirely unprotected condition from the time defendants stopped work on Friday, until they began work on Tuesday. Can it be fairly contended by the other side that they had no knowledge of the danger? or that there was no danger of damage to plaintiffs' property by reason of the tearing down and excavating? The defendants are estopped by their own acts from making that contention. Why was the notice of Friday, May 16th, 1902, given by both defendants if the conditions were not such as to warrant a reasonable apprehension of danger? Can it be said in answer that after the notice plaintiffs had ample time to proteet their property? The defendants by their own acts, are estopped

from raising any such contention; the testimony shows that defendant Schlutter informed plaintiffs that defendant Novak would not let another builder go on her property in order to underpin plaintiffs' wall. Within 24 hours after the notice that underpinning was necessary was given plaintiffs, they employed the only person whom defendants would permit to do the work. The law demands nothing unreasonable, and no greater dilligence could have been shown by plaintiffs in securing some one to protect their property and possibly greater delay in having the work done. In view of this testimony, can it be said by defendants that plaintiffs were negligent in having the work done or in employing an incompetent person to do the work? Again, attention is called to the photograph referred to in the testimony. If demonstration is possible in a case involving negligence, that photograph demonstrated that the collapse of plaintiffs' wall was due to the excavations made alongside of it; the photograph showed that after the collapse of plaintiffs' wall, there remained standing a portion of the extreme rear of plaintiffs' wall, probably six or eight feet long, and the most of it the full height of the wall as originally built. Defendants' foundation trench ran nearly the whole length of the plaintiffs' wall. Defendant Schlutter's building was about twenty feet deep, and plaintiffs' building was 28 feet deep, and that photograph clearly demonstrated that for the full length of the excavation made by defendants, plaintiffs' wall collapsed, and where there was no excavation, the wall remained standing; in other words, where the wall had been undermined by the excavations, it fell, and where it had not been undermined, it remained standing. The story told by that photograph must be believed, and when taken in connection with the testimony of the witness Armiger, an experienced builder, that most undoubtedly the fall of the house was the natural and probable result of digging the excavation below the foundations, and that there could be no other cause; and the testimony of the witness Miller, one of the ablest and best known contractors in Baltimore, that it is foolishness to attempt to excavate near a building where it is not properly

shored up, and·that the wall fell because the excavation had
weakened the earth under the wall; it is respectfully submit-
ted that the plaintiffs have made out a case which ought to
have been submitted to the jury.

Under the contract existing between defendant Schlutter
and Novak, for the erection of the building, Novak was re-
quired to dig the foundations of defendant's buildings to a
distance of three feet below ground. The age and character
of the building was known to the defendants, and· the.work
contracted.to be done was such that the damage which re-
sulted might have been anticipated as a direct and probable
consequence of the performance of the work contracted .for,
unless all reasonable precautions to *anticipate, obviate and pre-
vent this probable consequence, were taken;* and the question as
to whether such injury might reasonably have been antici-
pated as·a probable consequence of the excavation *was a·fact
for the jury.* Bonaparte v. *Wiseman,* 89 Md. 19.

Defendant Novak's prayer was granted upon the theory
that the negligence which caused the building to fall, occurred
after his employment by plaintiffs,. when all the testimony
shows that all the damage that could possibly have been done
by excavating, and in failing· to protect the wall, was done
long before defendant, Novak,·was employed or began. work
·under his contract with plaintiffs, and. there is nothing.in· the
record to show that when work was commenced that Tuesday
morning between 8:30 and 9 A. M., that the work was being
done for plaintiffs, and even if the testimony did show that the
work·begun at that time was being done under the contract
with the plaintiffs, there is absolutely nothing in the record to
show that there was any negligence in doing that work. The
grossest kind. of negligence that might be committed by
Novak during the ten or fifteen minutes in which he was en-
gaged in doing work the morning· the building. collapsed,
would hardly account for the fall of :the building. The. neg-
ligence in not protecting ·the wall during the tearing down of
the old buildings and excavating below the foundation. of.that
wall was the *proximate cause* of the fall of the. building and

anything that might have been done that morning must necessarily have been the *remote cause* of the damage.

*John M. Requardt* (with whom was *J. Fred. Requardt* on the brief), for Novak, appellee.

This appellee is not liable in this action:

1. Because the appellants had full knowledge of the character of the work he was doing on the premises of Mrs. Schlutter, and besides were duly notified that underpinning was necessary to protect their house.

2. That after such notice the burden was thrown upon the appellants to protect their property, and if they did not do so with the ample time they had, then without showing gross negligence on his part, they must bear the loss if damage ensued to their property.

3. That he was not negligent in any of the work done for Mrs. Schlutter, either before he notified the appellants that they must underpin their house, or afterwards.

4. That the appellants cannot claim in this suit that he was negligent in performing the alleged contract to do the underpinning for the appellants, or that he did not properly perform the same, because this is a suit in tort for negligently excavating below the foundation of the appellants' house without notice, while their remedy, if any they have, must be a suit on such alleged contract.

Even if it were admitted that Novak was grossly negligent in his work after the notice given to the appellants to underpin their property, still; it is submitted, he is not liable in this action, because the next day he is alleged to have made a contract with the appellants to do such underpinning, and any act of his about the work after such contract must be construed as a failure to properly perform such contract, which the appellants are precluded from showing in this action, it not appearing that he was negligent in the interim between the time of such notice and the making of such alleged contract.

The theory upon which the appellants tried their case was, that they had shifted the burden of properly protecting their

property, after notice to do so, back to Novak by entering into a contract with him to do it for them.

The proposition that the appellants cannot show negligence in this case by reason of the appellee, Novak, failing to perform such alleged contract is elementary and does not need an authority to sustain it. The gravamen of this action is the wrong done to the appellants' property by reason of an excavation made below their foundation wall without notice to them. They surely cannot be heard now to say, "That they had received notice and that they promptly engaged Novak to protect their property and he had not done so, and hence the appellees are liable to them." The wrong of which they then complain is that Novak did not perform his contract, and that question, it is submitted, cannot be tried in this case.

*W. Calvin Chesnut* (with whom were *Gans & Haman* on the brief), for D. Schlutter, appellee.

It conclusively appears by the plaintiffs' own testimony that they *were expressly notified* by the defendant *in ample time to have protected their property.* Indeed, the record shows that after receiving the notice to protect their property, the plaintiffs engaged the defendant, Novak, to do so for them; and the record shows further that if Novak had done so, as he agreed to do (by the plaintiffs' testimony), the damage to the plaintiffs' house would not have resulted. Under the law of the case (*Bonaparte* v. *Wiseman*, 89 Md. 22), this timely notice completely exempted the appellee, Schlutter, from liability.

The fourth prayer submitted by the appellee and granted by the Court, took the case away from the jury on the ground that the work of improving the appellee, Schlutter's lot, had been committed by her to an independent contractor, and the damage to the plaintiffs' house was not reasonably to have been anticipated as the probable consequences of the excavation, but was caused by the negligence of the independent contractor. In the Bonaparte case, this Court decided that the mere fact that the work was done by an independent contractor did not, of itself, exempt the owner of the lot under

course of improvement from liability.  In that case the Court further said that it was a question for the jury whether the damage was reasonably to have been anticipated as the probable consequence of the excavation.

In the present case, however, there is no necessity for submitting this question to the jury, as the record fails to show any facts which would lead the jury to find that the defendant, Schlutter, could reasonably have anticipated the damage to the plaintiffs' house as a probable consequence of the excavation.  The testimony of the plaintiffs tend to show that the damage was not a necessary result of the excavation, but resulted from the failure of the contractor to sufficiently prop the plaintiffs' wall.  If this negligence was legally chargeable to Novak, still Mrs. Schlutter would not have been liable, as it was negligence in a collateral matter.  It was not the very doing of the work which caused the injury, but the failure of the independent contractor to do it in a proper way.

The second and third prayers of the appellee, Schlutter, were based on the proposition that when the appellee, Schlutter, gave the plaintiffs timely notice to protect their property, she discharged her liability to them in connection with the matter, provided she thereafter caused the excavation to be made with reasonable and ordinary care.  There was no evidence in this case to show a want of this.  It is again repeated that according to the record, the damage resulted from the failure to prop.  After the notice, it was the duty of the plaintiffs to prop their wall and not the duty of the appellee, Schlutter.  On page 23, 89 Md., this Court says: "If one about to excavate his own lot do it, or cause it to be done, so carefully as not to injure the adjacent houses, he need not give notice to their owner; if, on the other hand, he give timely notice to the adjacent owners, the burden will be thrown on them to protect their own property, and he will not be liable for damages sustained by them, if he makes the excavation with reasonable and ordinary care."

When we apply this law to the facts of this case, the result of the trial below is obvious.  It will be remembered that on

the Friday morning mentioned the work of excavation on Mrs. Schlutter's lot had proceeded so far that it became necessary to notify the plaintiffs to protect their property. Accordingly, work was suspended, and Mrs. Samuels, representing the plaintiffs, was notified in person by Mrs. Schlutter and the builder, Novak. This cast upon the plaintiffs the burden of protecting their own property, and this burden they assumed by employing Novak to protect their property for them. According to their testimony, they made an agreement with him to this effect the following day, Saturday. Nothing further was done until the next Tuesday morning, when, a few minutes after work was again begun by Novak, the wall collapsed. The plaintiffs, therefore, allowed nearly four days to elapse after receiving the notice before the injury to their house. resulted. As a matter of law, therefore, it is very clear that they had timely notice, and failed to act under it. By engaging Novak to do the work for them, they thereby made him their agent, and his failure was attributable to the plaintiffs and not to the appellee, Schlutter.

PAGE, J., delivered the opinion of the Court.

This is an action of tort, brought by the appellants against the appellees to recover damages for injuries to the appellants' house, occasioned by the alleged carelessness of the appellees. It is alleged in the declaration that the appellees while engaged in removing a building adjacent to the property of the appellants, "willfully, carelessly and in an unskillful and unworkmanlike manner, negligently and wrongfully tore down and removed a building adjacent to the property of the said plaintiffs, and then and there excavated and went below the foundation walls of the plaintiffs' property, without notice to said plaintiffs, and that by reason thereof the property of the plaintiffs was structurally weakened and said property collapsed and fell in, &c."

The defendants plead the general issue; and the judgment being for them, the plaintiffs appealed.

The proof shows that on Friday, the 16th of May, 1902,

the appellants were notified by Mrs. Schlutter, the owner of the property about to be improved, that they "could not go ahead with their work, without underpinning her property." At that time the Schlutter building was entirely down, and an excavation or ditch had been dug for the walls of the new structure, along and below the foundations of the walls of the appellants' house. Mrs. Samuel on the same day entered into an agreement with the defendant Novak, in which the latter agreed for a consideration of fifty dollars to do the work of underpinning the walls of the appellants' house and to proceed with the work on the Monday following. Novak however, did not begin this work until the following Tuesday. At the time this agreement was made, the walls of the Schlutter building were entirely down, and there were no props, braces or other precautions to protect the wall on the adjoining property, except "a narrow board extending midway across the Schlutter lot." There was evidence offered, tending to show that it was a custom among builders, while tearing down a building "similar to this," to protect the wall on the adjoining property by the use of props and braces; and the fall of the appellants' wall, was caused by the excavation upon the appellees' lot.

The Court granted two prayers, both offered by the defendants. The appellants asked no instructions.

One of the granted prayers of the appellees instructed the jury that "by the theory of the plaintiffs' case," that is, (as we construe the phrase) if they found that the injury to the appellants' property was occasioned by the failure of Novak to properly perform a contract entered into between the plaintiffs and Novak for the protection of their property, their verdict must be for Novak.

The hypothesis upon which this instruction is based requires that the jury shall find, as the condition of Novak's liability, that the injury was caused by his failure to perform his contract to underpin the plaintiffs' wall. If this were found to be the cause of the injury, and not the negligence of the defendants in making the excavation, then it seems to be

clear that the only cause of action the plaintiffs would have, would be against Novak for a breach of the contract in not properly performing the work of the underpinning, and not for negligently making the excavation. Upon the hypothesis of this prayer, no recovery could be had against Novak, except upon an action *ex contractu* for a breach of his contract. "It is impossible," said this Court, "to disregard the substantial principles which underlie our system of jurisprudence and to some extent govern the forms of action. These principles must still be recognized, however the new form may be changed or simplified." *Stirling* v. *Garritee*, 18 Md. 475.

This instruction was therefore properly granted.

By the other prayer, the case was taken from the jury, so far as concerned Dora J. Schlutter. They were directed to find for her, "because it appears from the plaintiffs' case the work of excavation on the defendants' lot was wholly committed by her to an independent contractor; that the injury to the plaintiffs' house was not reasonably to have been anticipated as the probable consequence of the excavation, but was caused by the negligence of the independent contractor."

This prayer makes two assumptions of fact, viz: That the injury to the plaintiffs' house was not reasonably to have been anticipated as the probable consequence of the excavation, and that it was caused by the negligence of the independent contractor; and from these two facts, because the work of excavation was committed to an independent contractor, the jury are instructed to find for the defendent Schlutter.

The obligation of the owner, in cases of this kind, is fully laid down by this Court in the recent case of *Bonaparte* v. *Wiseman*, 89 Md. 21. In that case the legal proposition by the appellant's fourth prayer was that the owner was not liable for the injury to the adjoining property, because the work was done by the independent contractor under the written agreement appearing in the record of that case. The Court after stating broadly the general principle, "that when the work is done by a competent contractor under an agreement which gives him complete control of the work and of the persons employed

by him to do it, such persons will be his servants and not those of the employer, and the latter will not be liable for injuries caused by the negligence, because they are not his servants and are not under his control," further said, "but this doctrine has been repeatedly held not to relieve an employer from all responsibility of every kind for the consequences of defective or unskillful work done on his premises even by the servants of an independent contractor." "It has no application where the resulting injury instead of being collateral and following from the negligent act of the employee alone, is one that might have been anticipated, as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of its performance." In the same case it was also said, "the question as to whether such injury might reasonably have been anticipated as a probable consequence" of the work contracted for is a question of fact for the jury. By the contract, which appears in the record, Novak was to dig the foundations to a depth of three feet below ground, and this depth, as the proof shows would carry the excavation below the walls of the adjoining property. Whether injury to the adjoining walls ought reasonably to have been anticipated, was a question of fact, which should have been submitted by the prayer to the jury. Unless the jury found that it was not reasonably to have been anticipated, the owner was responsible for the injury if she did not take reasonable precautions to obviate and prevent the probable consequence. The excavation was not a matter collateral to the undertaking of the contractor; it was one of the things that he contracted to do, and if that, under all the circumstances was such a thing as would probably be injurious to other persons, it was the duty of the owner to provide that reasonable care should be taken to obviate, the probable consequence. But the prayer is defective also, in that it withdrew from the jury the question of fact, as to the cause of the injury. It assumes that it was caused by the negligence of the independent contractor. The excavation was along and below the adjoining walls and no props or braces were used to sus-

570. CHES. & O. CANAL vs. WEST. MD. R. CO.

Syllabus.                                    [99

tain them. Whether this was the cause of the injury, and whether the conduct of the contractor in making and leaving the ditch open, and the adjoining walls unprotected amounted to negligence on his part were questions of fact to be determined by the jury, and should have been submitted to them to find. There was also evidence of notice to the adjoining owner of the necessity for underpinning her walls, and of delay in beginning that work until the following Tuesday morning. What the effect of all this may be, we are not called upon to determine, as it does not concern any question that this record presents. Whatever it may be however, it cannot remove the objections to this prayer. Nor can we pass upon the prayers of the appellees, that were presented and subsequently withdrawn. They are not now before us, and we cannot consider them.

For error in granting the prayer last referred to, the judgment will be reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded for new trial.*

(Decided June 8th, 1904.)