584 A.2d 1306

**Julia F. RITZ**

v.

**Stuart L. MYERS, d/b/a Ellicott City Veterinary Clinic.**

**No. 206, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 31, 1991.

Jennifer S. Pressman (Kathleen Howard Meredith and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellant.

Allan A. Noble (Budow and Noble, P.C., on the brief), Bethesda, for appellee.

Argued before MOYLAN, GARRITY and FISCHER, JJ.

**718**

FISCHER, Judge.

Appellant, Julia F. Ritz, appeals from an adverse jury verdict entered in the Circuit Court for Howard County (Nissel, J.) in favor of Stuart L. Myers d/b/a Ellicott City Veterinary Clinic.

Mrs. Ritz raises five issues for our review:

1. Did the trial court err in excluding testimony of Scott Kaplan as to alleged statements made by John Jones, a clinic employee?

2. Did the trial court err in excluding deposition testimony of Scott Kaplan considering at the time his deposition was offered Kaplan was in Virginia and unable to return to Maryland to testify?

3. Did the trial court err in refusing to allow evidence of subsequent measures taken by Myers to remedy the problem of the sinkhole?

4. Did the trial court err in refusing to permit appellant's construction expert to testify regarding the standard of care applicable to certain construction?

5. Did the trial court err in instructions to the jury?

On January 26, 1986, appellant was leaving Myers' clinic with her dog. While she was walking across the front lawn, the ground beneath her left leg gave way and her left leg sank approximately two to three feet in the ground. Julia Ritz stated that, immediately after her fall, John Jones, a veterinary assistant working at the clinic, stated, "You're very lucky, because there have been other holes bigger than this, and you could have sunk all the way down."

In her case in chief, appellant attempted to introduce testimony of alleged admissions made by John Jones to Scott Kaplan, an investigator retained on behalf of appellant. The trial court refused to permit Kaplan to testify as to statements allegedly made by Jones to Kaplan approximately two weeks following the occurrence. After his testimony was completed, Kaplan was excused, and he returned to Virginia. Jones, testifying on appellee's behalf,

stated, on cross-examination, that he did not make the statements attributed to him by Kaplan. Appellant then moved to read excerpts from Kaplan's deposition, but permission was denied by the court.

The court also refused to permit appellant to question Myers as to remedial measures taken by him in response to the sinkhole or other holes in the front yard. In addition, the court did not allow testimony from John Heyn, an expert in construction, from whom appellant wished to elicit testimony in connection with the cause of the sinkhole and whether there was a breach, attributable to appellee, in the standard of care utilized during the excavation and backfilling of the construction site in 1963. Appellant also excepted to the failure of the trial court to give certain requested instructions to the jury.

## I.

Did the trial court err in excluding testimony of Scott Kaplan as to alleged statements made by John Jones, a clinic employee?

In an effort to establish that Myers had notice of sinkholes in his front yard, appellant wished to introduce as evidence statements allegedly made by John Jones, a longtime clinic employee.

Appellant was permitted to testify that at the time of the occurrence Jones told her she was "very lucky, because there have been other holes bigger than this and you could have sunk all the way down." Scott Kaplan, an investigator hired by appellant, proffered testimony to the court that he spoke with Jones two weeks after the accident and Jones told Kaplan he had used concrete and blacktop to fill the hole into which appellant had fallen because Jones feared the area might again collapse. Jones purportedly also told Kaplan that there had been previous problems with other sinkholes in the front yard.

The trial court excluded the testimony, ruling that it was inadmissible hearsay for reason that "agency was [not]

established to allow that particular hearsay as an admission against interest of principal, agent, master, servant."

Generally, admissions by a party or his representative are an exception to the hearsay rule. In *Smith v. Branscome,* 251 Md. 582, 589, 248 A.2d 455 (1968), the Court of Appeals quoted *Lambros v. Coolahan,* 185 Md. 463, 468, 45 A.2d 96 (1945), which stated:

'[O]ral admissions of a party "are universally deemed admissible" and legally sufficient to prove facts admitted. Wigmore, Secs. 1048, 2075.'

For a statement by a non-party to be binding on a party, there must be some relationship between the party making the statement and the party against whom it is offered. *Aetna Casualty & Surety Co v. Kuhl,* 296 Md. 446, 463 A.2d 822 (1983). The agency relationship must be proved "before the admission of an alleged agent can be offered to bind the principal." *Wells v. Hecht Bros. & Co.,* 155 Md. 618, 623, 142 A. 258 (1928). It must also be demonstrated that the statement was made while the agent was acting within the scope of his authority, *Grzboski v. Bernheimer–Leader Stores,* 156 Md. 146, 148, 143 A. 706 (1928), and "relate to an act he is authorized to perform." *Burkowske v. Church Hosp. Corp.,* 50 Md.App. 515, 519, 439 A.2d 40, *cert. denied,* 293 Md. 331 (1982). *Burkowske,* 50 Md.App. at 520, 439 A.2d 40 (citations omitted), also makes clear that "in order to bind the principal (and thus constitute an admission by it), the agent's statement not only must concern matters within the scope of his own agency authority but must also be part of the *res gestae, i.e.* made contemporaneously with the transaction to which it relates." [1] Appellant insists that the latter requirement "has been soundly criticized by court and commentators alike" and should not be adhered to by this Court. We are

---

**1.** For a thorough analysis of this principle, see the opinion of Chief Judge Wilner writing for this Court in *B & K Rentals v. Universal Leaf,* 84 Md.App. 103, 578 A.2d 274 (1990), *cert. granted* 321 Md. 633, 584 A.2d 611 (1991).

not, however, free to disregard clearly established law. Jones' statement to Kaplan was properly excluded.

## II.

### Did the trial court err in excluding deposition testimony of Scott Kaplan?

■ Scott Kaplan, an investigator for appellant, was produced by the appellant to testify with respect to findings of his investigation. At the conclusion of his testimony, both plaintiff and defendant excused Mr. Kaplan from further participation in the trial, and he was permitted to return to Virginia. Subsequently, John Jones testified for appellee with respect to the lack of prior problems with sinkholes. Appellant wished to recall Mr. Kaplan to rebut the statements made by Jones. Being unsuccessful in persuading Kaplan to return to Howard County to testify, appellant attempted to introduce Kaplan's deposition. The trial judge refused to permit the deposition to be read. The judge apparently found that it was appellant's fault that the witness was unavailable, because appellant acquiesced in permitting Kaplan to leave the State prior to completion of the trial. We believe that in denying appellant the opportunity to utilize the deposition, the trial judge erred. Under the circumstances of this case, however, we believe the error was clearly harmless.

Maryland Rule 2–419(a)(3)(B) provides that a deposition of a witness may be used for any purpose if the witness is out of the State and his absence was not procured by the party offering the deposition. All of the requirements of the rule were met. The witness was out of the State and the Court found as a matter of fact that the witness's absence was not procured by appellant. The judge erred in adding an additional requirement not contemplated by the rule *i.e.* that the party offering the deposition could have, with foresight, prevented the witness from leaving the State.

■ We believe the error to be harmless because the testimony of Mr. Kaplan would not have constituted sub-

stantive evidence that appellant had notice of prior sink-
holes. The only permitted use of Kaplan's testimony was to
impeach the credibility of Jones who denied making the
statements attributed to him by Kaplan. In his direct
testimony, Jones stated that he had never before seen a
sinkhole in the yard. The only holes observed by him were
little holes dug by dogs. Michelle Deltura, office manager
of the Ellicott City Veterinary Clinic, testified that she had
been working at the clinic for fifteen years and she had
never seen a hole similar to the one into which appellant
fell. Daryl Mister testified that she had been an employee
of the clinic for over ten years and had never seen any holes
in the front lawn. In addition, Dr. Stuart Myers, appellee,
testified that he had never been advised of nor had he
personally observed any holes in the front lawn. The only
thing he had seen resembling a hole were depressions dug
by dogs being walked on the lawn. He further stated that
he had never experienced problems with sinkholes prior to
appellant's accident. Even more telling was appellant's
testimony on deposition wherein she stated that no one had
stated anything to her concerning prior holes but merely
asked of her physical condition. In view of the cumulative
testimony indicating lack of any prior notice of sinkholes
coupled with the absence of any evidence adduced by appel-
lant on the subject, the failure of the trial judge to admit
Mr. Kaplan's deposition to challenge Jones' credibility was
harmless error.

### III.

Did the trial court err in refusing to admit evidence
of remedial measures?

■ Appellant attempted without success to introduce
evidence of actions taken by appellee subsequent to the
accident to correct the problem of sinkholes and cave-ins in
his front lawn. In addition, appellant wished to show that
appellee filled the hole into which appellant fell with con-
crete and blacktop and that two years after the accident
another sinkhole developed and Myers hired a contractor to

excavate the front lawn, remove the remains of the old foundation and backfill the property. Lastly, she wished to show that the remedial measures described solved the problem. Appellant insists that the evidence offered is admissible on three grounds: (1) The evidence is admissible to establish that appellee failed to adhere to the applicable standard of care in preparing and maintaining his property for business invitees; (2) The evidence is admissible to show the effectiveness of the measures taken by Myers; (3) The evidence is admissible to establish inferentially the cause of the cave-in which injured appellant.

The general rule is that subsequent remedial measures are inadmissible as an admission of negligence, culpable conduct or liability. *Long v. Joestlein,* 193 Md. 211, 220, 66 A.2d 407 (1949). An apparent exception to the rule has been described as a "standard of care exception" which permits subsequent measures to prove the scope of the duty of care owed. A thorough analysis of this exception is set forth in *Wilson v. Morris,* 317 Md. 284, 563 A.2d 392 (1989). *Morris* makes clear that while remedial measures are inadmissible as an admission of negligence, such evidence may be used to prove that the applicable standard of care had not been met at the time of the accident. *Morris,* 317 Md. at 298, 563 A.2d 392. In *American Paving & Contracting Co. v. Davis,* 127 Md. 477, 96 A. 623 (1916), the Court of Appeals approved the admission of evidence that the defendant placed a wire hood or screen over a smokestack after a fire started, apparently, from sparks emanating from the smokestack. In *Blanco v. J.C. Penney Co.,* 251 Md. 707, 248 A.2d 645 (1967), the Court of Appeals reversed the trial court's entry of judgement in favor of the defendant at the end of the plaintiff's case. *Blanco* involved a case wherein testimony was excluded that the defendant placed decals on a clear glass door after plaintiff had walked into it breaking the glass.

We do not find the cases relied upon by appellant to be apposite. Each of the cases cited by appellant involved dangerous conditions which were clearly observable. In

such cases evidence of remedial measures was relevant to show what could have been done to alleviate the obviously dangerous circumstance. The case *sub judice* involves a lawn that looked like every other lawn. There was nothing in the appearance of the lawn to indicate that it was susceptible to sinkholes. We do not believe the trial court erred in excluding evidence of remedial measures as they relate to the applicable standard of care.

## IV.

Did the trial court err in refusing to permit appellant's construction expert to testify regarding the standard of care applicable to certain construction?

Over twenty years prior to the injury suffered by appellant, Myers had an existing building razed and the present building constructed. Appellant offered John Heyn, a construction expert, and proffered that, if permitted, Heyn would testify as to the cause of the sinkhole, that there was a breach by the contractor in the standard of care used in excavating and back filling the construction site, and that the negligent nature of the work should have been apparent to anyone making a reasonable inspection of the construction site. It was also proffered he would testify that the danger of cave-ins and sinkholes is inherent in construction of the type performed, and more likely than not, there had been previous problems with sinkholes. The trial court did not permit Mr. Heyn to testify, ruling that negligence of the contractor could not be imputed to Myers. Appellant insists the court erred and that Myers is vicariously liable for the negligence of the independent contractor.

Appellant primarily relies upon *Bonaparte v. Wiseman,* 89 Md. 12, 42 A. 918 (1899), *Samuel v. Novak,* 99 Md. 558, 58 A. 19 (1904), and *Rowley v. City of Baltimore,* 305 Md. 456, 505 A.2d 494 (1986). Both *Bonaparte* and *Samuel* involve construction on adjoining properties wherein damage was occasioned to the adjoining property through negli-

gence of an independent contractor. The Court of Appeals found in both cases that, although the general rule is that an employer of an independent contractor is not liable for the negligence of an independent contractor or his employees, negligence of the independent contractor could be imputed to the landowner under certain circumstances. As explained by Judge Schmucker in *Bonaparte*, 89 Md. at 21, 42 A. 918:

> [T]he distinction is well established between the cases in which, when work is being done under a contract, an injury is caused by negligence *in a matter collateral to the contract and* those in which *the thing contracted to be done* causes the mischief. In the former class of cases the employer is not liable for the injury but in the latter he is. [Emphasis in original.]

The reasoning is if a person contracts to have something constructed which is inherently dangerous or arranges to have construction performed in such a manner as to present a risk of danger to third parties, the employer may be liable. In the case *sub judice*, the work performed was clearly not of such nature. The general rule, therefore, applies and the employer is not liable.

In *Rowley* an employee of an independent contractor working in a building owned by the city but operated and managed by an independent contractor sued the city for injuries which she attributed to the negligence of the independent contractor. The Court of Appeals, in *Rowley*, 305 Md. at 461–462, 505 A.2d 494, stated the general rule that an employer of an independent contractor is not liable for the negligence of the contractor or his employees, but the Court also noted that there are numerous exceptions which fall into three broad categories:

> 1.  Negligence of the employer in selecting, instructing or supervising the contractors.
> 2.  Non-delegable duties of the employer, arising out of some relation toward the public or the particular plaintiff.
> 3.  Work which is specially, peculiarly, or 'inherently' dangerous.

It seems apparent that exceptions one and three are clearly inapplicable to the fact situation in the case under consideration.

With regard to the second exception, in *Gardenvillage Realty v. Russo* 34 Md.App. 25, 37, 366 A.2d 101 (1976) (quoting 2 Harper & James, *The Law of Torts,* §§ 26.11 at 1406 (1956)), this Court stated, "Non-delegable duties arise in situations in which the law deems a particular duty 'so important and so peremptory that it will be treated as non-delegable.... Duties imposed by statute are often found to be of this kind....' " *In Gardenville* this Court found that the Building Code of Baltimore City placed a non-delegable, affirmative duty on the owner to insure compliance with the Code.

It is, therefore, clear that the cases relied upon by appellant are easily distinguishable from the case *sub judice.* It is evident that Judge Nissel was within the bounds of his discretion in finding that the independent contractor's negligence was not imputable to Myers and in refusing to permit appellant's expert to testify.

## V.

Did the trial court err in instructing the jury?

Appellant avers that Judge Nissel erred in refusing to give several requested jury instructions. The alleged errors are: that the court failed to instruct the jury that the landowner had a duty to business invitees to reasonably inspect the property to discover latent defects, that actual knowledge of a defect is not required to impose liability on a landowner, and that the landowner was vicariously liable for the negligence of his contractor.

In his instructions, the trial judge stated in part:
[T]he owner of land must use reasonable care to see that those portions of the property which invitees reasonably may be expected to use are safe, or if not safe, to give the invitee reasonable notice of the unsafe condition.... The owner, Stuart Myers, must have had knowledge of the

defect or unsafe condition before the accident occurred in sufficient time to correct it or to warn the invitee, Julia Ritz. The owner is considered to have had such knowledge when the defect or unsafe condition is such that it could have or should have been discovered by the exercise of reasonable care. An owner of land is subject to liability for physical harm caused to his invitee by a dangerous condition on his property if he knew or by the exercise of reasonable care should have known of the dangerous condition.

We believe the instruction as given fairly covered the first two points raised by appellant, and for reasons fully set forth earlier in this opinion, the court did not err in failing to give the requested instruction as to vicarious liability.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.