Arnold R. CLARK, Plaintiff,

v.

ASSOCIATES COMMERCIAL CORP., A Delaware Corporation, Defendant and Third–Party Plaintiff,

v.

Bob HOWARD d/b/a H & J Rec Auto, Inc.; Clark Investigation & Recovery, Inc.; Randall Wayne Lett; and such other unknown third parties as were liable for any occurrence in Knoxville, Tennessee, Third–Party Defendants.

Civ. A. No. 92–1325–MLB.

United States District Court, D. Kansas.

May 27, 1994.

W. Thomas Gilman, Martin R. Ufford, Redmond, Redmond & Nazar, Wichita, KS, for Arnold R. Clark.

Eric D. Bruce, Kenneth H. Jack, Bruce & Davis, Wichita, KS, for Associates Commercial Corp.

William R. Sampson, Paul W. Rebein, Shook, Hardy & Bacon, Overland Park, KS, for Shook, Hardy & Bacon.

Bryce A. Abbott, Natalie G. Haag, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Wichita, KS, for Clark Investigation & Recovery, Inc., Randall Wayne Lett.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter is before the court on plaintiff's motion for partial summary judgment (Doc. 126) and defendant's motion for complete or, in the alternative, partial summary judgment (Doc. 146). The case involves the allegedly wrongful repossession of plaintiff's tractor-trailer rig by defendant Associates Commercial Corp. ("Associates") and the third-party defendants. Plaintiff claims that, during the course of the repossession, Associates violated its statutory duty under Tenn. Code Ann. § 47-9-503 not to breach the peace. Plaintiff seeks damages for intentional or reckless violation of that statutory duty as well as conversion, battery, breach of contract, outrage, and invasion of privacy.

### SUMMARY JUDGMENT STANDARDS

Under Federal Rule of Civil Procedure 56(a) and (b), a claimant or defending party may move for "a summary judgment in the party's favor upon all or any part thereof." Summary judgment is appropriate if no genuine issue of material fact exists with respect to the particular claims or issues upon which summary judgment is sought. Fed.R.Civ.P. 56(c). Summary judgment is inappropriate if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir. 1991).

The standard for cross-motions is the same as for individual motions for summary judgment. *Arnold Pontiac–GMC, Inc. v. General Motors Corp.,* 700 F.Supp. 838, 840 (W.D.Pa.1988). The moving party bears the initial burden of demonstrating the basis for its motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Shapolia v. Los Alamos Nat'l Laboratory,* 992 F.2d 1033, 1036 (10th Cir.1993). The court reviews the evidence in a light most favorable to the nonmoving party, *e.g., Washington v. Board of Public Utilities,* 939 F.2d 901, 903 (10th Cir.1991), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

### FACTUAL BACKGROUND

The court makes the following findings of fact pursuant to the parties' motions and the pretrial order:

On or about March 31, 1989, plaintiff entered into a "Security Agreement (Conditional Sale Contract)" with Doonan Truck & Equipment, Inc. ("Doonan") for the purchase of a 1989 Peterbilt tractor/truck. Plaintiff agreed to pay Doonan monthly installments of $1,485.22 beginning May 15, 1989 and granted Doonan a security interest in the truck. The parties agreed that upon default, Doonan or its assigns could proceed with all rights and remedies of a secured party under the Uniform Commercial Code. Sometime subsequent to the execution of the agreement, Doonan assigned its interest in the agreement to Associates.

On or about May 24, 1990, plaintiff entered into a "Security Agreement (Conditional Sale Contract)" with Utility Midwest Trailer Sales, Inc. ("Utility") for the purchase of a 1990 Utility Trailer. Plaintiff agreed to pay monthly installments of $626.00 and granted Utility a security interest in the trailer. The parties agreed that upon default, Utility or its assigns could proceed with all rights and remedies of a secured party under the Uniform Commercial Code. Sometime subsequent to the execution of this agreement,

Utility assigned its interest in the agreement to Associates.

Plaintiff began to be delinquent in his payments to Associates under the terms of the aforesaid agreements as well as other financing arrangements with Associates for other tractor-trailers. Beginning in approximately mid-December 1991, Associates began repossessing and selling plaintiff's tractors and trailers.

On May 8, 1992, Associates entered into a "Repossession Agreement" with third-party defendant Bob Howard ("Howard") as an independent contractor to repossess the tractor-trailer at issue in this case. The Repossession Agreement identified Bob Howard and no other person as the repossessor. On May 14, Howard retained Clark Recovery, Inc. ("Clark Recovery"), of Knoxville, Tennessee as an independent contractor to repossess the tractor-trailer. Associates was not aware that Howard had subcontracted with Clark Recovery for the repossession.[1] Clark Recovery arranged for one of its employees, Randall Wayne Lett, to repossess the plaintiff's tractor-trailer, and hired an independent contractor, William Roberts, to drive the tractor-trailer back if the repossession was successful. Lett and Roberts repossessed plaintiff's tractor-trailer during the evening of May 14 at a truck stop near Knoxville, Tennessee.[2]

The chief dispute in this case concerns a confrontation between plaintiff and Lett that occurred during the course of the repossession. According to plaintiff's deposition (Doc. 127, Ex. 23), after plaintiff arrived at the truck stop, Lett climbed into the cab of the tractor-trailer, while plaintiff was resting in the sleeper compartment, informed plaintiff of the repossession, showed plaintiff a file regarding the repossession, and told plaintiff that "[he] was going to have to get out" of the truck. *Id.* at 14. Plaintiff questioned Lett and "asked him to get out," but Lett refused. *Id.* According to plaintiff, Lett then told plaintiff that "he didn't think [plaintiff] could get him out" and threatened to have plaintiff arrested. *Id.* at 30, 224. The following altercation then allegedly took place:

"I grabbed [Lett] by the shoulder and—and the neck, I suppose, I grabbed him and forcibly pushed him out. And he's trying to maintain a grip on me, hanging on, and gets hold of my leg, behind my left leg, and pulls it over the seat, starts pulling me out.

I hang onto the steering wheel and the back of the seat and he's still got my leg. And about that time he—I feel the pain, I feel my leg is broken, it starts hurting real bad. And I'm trying to tell him that he's broken my leg and he won't let go. He just keeps pulling, keeps twisting, keeps jerking, and about that time I'm hurting, I'm screaming.

And he pulls me off the seat and then down on the step and he goes ahead and jerks me off to the ground and drags me away from the truck and then steps over me and climbs in the truck. . . ."

*Id.* at 15–16.

Not surprisingly, Lett's deposition tells a much different story. According to Lett, after he had climbed into the truck and told plaintiff about the repossession, "[plaintiff] said, 'I don't think you're as big as you think you are, and I'm going to whip your ass'" and a "split second" later took a swing at Lett with his right hand, striking Lett in "the wrist area and the side of the head." (Lett's Depo., pp. 50–52, 55). Lett testified that plaintiff kept coming at him and he "thought [plaintiff] was trying to push [him] out of the truck on [his] head." *Id.* at 56–59. Plaintiff

---

1. Associates contends that Howard's subcontracting with Clark Recovery was "contrary to the express contractual terms of the Repossession Agreement." (Doc. 145, ¶ 2). According to Katie Paris, an Associates collection manager who arranged the contract with Howard, Howard was retained only to pursue a *peaceful* repossession. (Doc. 148, Ex. B, pp. 48–49). Plaintiff, however, argues that, as an independent contractor, Howard "was free to 'handle' the repossession in any manner he felt was proper," and that, because the duty to repossess peacefully did not arise from the contract, the contract's terms are irrelevant. (Doc. 148, p. 5, ¶ 2).

2. The tractor and trailer have been sold by public auction in Great Bend. Associates retained the proceeds from the sale. (Doc. 127, p. 4, ¶¶ 9–10).

allegedly started kicking Lett in the side of the head and the rib area. *Id.* at 61. Lett then grabbed plaintiff's left foot and both Lett and plaintiff fell out of the truck. *Id.* at 62. Plaintiff grabbed onto the truck's door as he fell, but Lett "helped [plaintiff] come onto the ground." *Id.* at 63–64. When plaintiff hit the ground, his left foot was hooked beneath Lett's arm. *Id.* at 65. Plaintiff could not get up and told Lett, " 'You broke my leg.' " *Id.* at 68.

### DISCUSSION

I. *Plaintiff's Motion for Summary Judgment*

On May 24, 1993, plaintiff moved for summary judgment on two issues: (1) that, under both Tennessee and Kansas law, a secured creditor's duty to repossess without breaching the peace pursuant to § 9–503 of the Uniform Commercial Code is a nondelegable duty; and (2) that, under Kansas law, Associates ratified the acts of its repossession agents. (Doc. 127, pp. 7–18).

On June 7, 1993, this court issued a Memorandum and Order, reported in 149 F.R.D. 629 (D.Kan.1993), concerning, *inter alia,* an earlier motion by plaintiff for a determination of applicable substantive law. The court held that because plaintiff's causes of action against Associates sounded in tort and because, under Kansas choice of law principles, tort cases are governed by the substantive law of the state where the tort occurred, Tennessee law controls plaintiff's claims against Associates. 149 F.R.D. at 636–37. The court found that, according to Tennessee case law, "the duty to repossess peaceably [under § 9–503] is non-delegable, and thus, 'a secured party is vicariously liable for wrongful acts of the repossessor even if the repossessor is an independent contractor.' " *Id.* at 637 (quoting *McCall v. Owens,* 820 S.W.2d 748, 751–52 (Tenn.Ct.App.1991)).

Obviously, the court's June 7 Memorandum and Order had a substantial impact on the two issues raised in plaintiff's May 24 motion for summary judgment. The first issue—whether the duty to peaceably repossess is nondelegable—was answered by the court's quotation from the *McCall v. Owens* case. The second issue—whether under Kansas law Associates ratified the acts of the repossessors—was rendered moot by the court's decision that Kansas law did not apply.

On June 16, 1993, third-party defendants Clark Recovery and Lett filed a response to plaintiff's motion for partial summary judgment. (Doc. 143). Defendant Associates followed suit on June 23. (Doc. 145). In their responses, both Associates and the third-party defendants conceded that, according to the court's June 7 Memorandum and Order, Tennessee law governs this case and, according to Tennessee case law, Tenn.Code Ann. § 47–9–503 imposes a nondelegable duty to repossess in a peaceable manner.[3] (Doc. 143, p. 4; Doc. 145).

Plaintiff filed a reply brief on June 29, 1993 expressing his view that the court's June 7 Memorandum and Order "decided the summary judgment motion." (Doc. 148, p. 7). Plaintiff contended that, in light of the court's order, Associates's response to plaintiff's motion was improper and requested that the court impose Rule 11 sanctions on Associates for plaintiff's costs incurred in filing a reply. (Doc. 148, p. 8).

■ Based on the rulings in its June 7 Memorandum and Order, the court holds as follows: (1) Tenn.Code Ann. § 47–9–503 imposed on the secured creditor, Associates, a nondelegable statutory duty not to breach the peace in the course of repossession; and (2) the issue of ratification under Kansas law is moot. Plaintiff's motion for summary

---

**3.** In their responses, Associates and the third-party defendants questioned the scope and affect of the nondelegability doctrine as it applies to this case. Associates, in fact, contended that summary judgment should not be granted on the nondelegability issue because "two aspects of nondelegable duty"—authority to act and vicarious liability—are "intertwined" in this case and "[plaintiff]'s nondelegable duty arguments are not properly applied in an abstract and academic sense." (Doc. 145). While the court is fully cognizant of the significance of Associates's and the third-party defendants' concerns, those concerns are not material to the narrow issues upon which plaintiff seeks summary judgment. Associates's and the third-party defendants' concerns will be considered in connection with Associates's motion, *infra.*

judgment is therefore granted as to issue # 1 and denied as to issue # 2. Plaintiff's request for sanctions under Federal Rule of Civil Procedure 11 is denied. The court does not infer an "improper purpose" from either Associates's or the third-party defendants' responses to a motion for summary judgment propounded *by the plaintiff,* notwithstanding the court's intervening June 7 Memorandum and Order. Moreover, the court finds the contents of Associates's and the third-party defendants' responses present objectively reasonable arguments addressing legitimate concerns.

## II. *Associates's Motion for Summary Judgment*

Associates's motion essentially seeks summary judgment with respect to four issues: (1) that despite the nondelegability of the duty to repossess peaceably under Tennessee law, plaintiff cannot establish that Associates is vicariously liable for the acts of Lett; (2) that plaintiff's conversion claim is defective; (3) that punitive damages cannot be awarded against Associates in this case because Associates is not the alleged wrongdoer; and (4) that no breach of peace occurred at any time prior to the point of physical contact between plaintiff and Lett.

### A. *Vicarious Liability*

■ As discussed *supra,* in its June 7 Memorandum and Order, the court held that under Tennessee law "the duty to repossess peaceably is non-delegable, and thus, 'a secured party is vicariously liable for wrongful acts of the repossessor even if the repossessor is an independent contractor.' " 149 F.R.D. at 637 (quoting *McCall v. Owens*). Plaintiff asserts that "[b]ecause the duty to repossess without breaching the peace is nondelegable, [p]laintiff need not establish the normal elements requisite to a finding of vicarious liability"—that is, that Associates is vicariously liable, as a matter of law, for the alleged wrongful acts of Lett. (Doc. 148, p. 9).

Associates and the third-party defendants contend otherwise. They argue that because the repossession agreement between Associates and Howard did not contemplate Howard's hiring anyone else to effect the repossession of plaintiff's tractor-trailer and because Associates was not aware that Howard had in fact hired Clark Recovery to do so, Associates cannot be held liable for any breach of peace by Clark Recovery's employee, Lett. According to Associates, as well as the third-party defendants, Lett's acts are those of an unauthorized subagent or an independent contractor once removed—acts for which Associates bears no responsibility pursuant to recognized principles of agency law, even though the doctrine of nondelegability applies. (Doc. 143, pp. 4–9; Doc. 145; Doc. 153).

In *McCall v. Owens,* the principal Tennessee case, the debtor, McCall, was in default because he refused to pay his creditor, First Tennessee Bank, for an insurance premium on an automobile covered by a security agreement between the parties. 820 S.W.2d at 750. First Tennessee Bank hired a repossession agency, East Tennessee Auto Recovery, and its employee, Ron Beverly, to repossess McCall's automobile. A letter from the bank to Beverly indicated that Beverly would not be indemnified for his "negligence or unauthorized acts." *Id.* Beverly obtained a wrecking truck from a local service station, Ted's Chevron Station, to tow the automobile from McCall's home. During the actual repossession, McCall "ran out to confront Beverly." *Id.* The wrecking truck ran over McCall's foot and knocked him to the ground, causing significant injuries. As a result, McCall filed two lawsuits: "One against First Tennessee Bank and East Tennessee Auto Recovery jointly and severally for torts incident to wrongful repossession, trespass to realty, chattel conversion, assault and battery, outrageous conduct and defamation. The other incorporated the first complaint and claimed that Ted's Chevron, East Tennessee Auto Recovery and Ron Beverly aided in the commission of these torts as a partnership."[4] *Id.* at 751. In an attempt to avoid liability, First Tennessee Bank argued that Beverly was acting in the capacity of an

---

**4.** It is important to note that there was no claim that First Tennessee Bank was vicariously liable for any action on the part of Ted Owens or his son.

independent contractor during the repossession. The court, however, as discussed *supra*, found that the duty not to breach the peace is nondelegable and that First Tennessee Bank was therefore vicariously liable for Beverly's wrongful acts, even though he was an independent contractor. *Id.* at 752.

There is a clear factual distinction between the present case and *McCall.* In *McCall,* the independent contractor whose employee breached the peace and caused the plaintiff's injuries, East Tennessee Auto Recovery, was an independent contractor hired directly by the secured creditor. In the present case, the independent contractor whose employee performed the repossession and allegedly breached the peace, Clark Recovery, is once removed from the independent contractor hired directly by the secured creditor, Bob Howard. That is, in this case, unlike *McCall,* the repossession was not effected by an independent contractor hired *directly* by the secured party.

Associates's repossession agreement with Bob Howard provided that Howard agreed to undertake the repossession. The agreement was silent about whether Howard could subcontract all or any of his duties. Hence, the issue at hand is whether the vicarious liability of a secured party announced in *McCall* extends to the acts of an independent contractor once removed—that is, a subcontractor of the independent contractor hired by the secured creditor—particularly when the secured creditor neither knew nor contemplated that the original independent contractor would hire the second independent contractor to perform the repossession.[5]

A number of courts have held that the duty to repossess peaceably under U.C.C. § 9–503 is nondelegable. *James v. Ford Motor Credit Co.,* 842 F.Supp. 1202 (D.Minn. 1994); *Nixon v. Halpin,* 620 So.2d 796, 798 (Fla.Dist.Ct.App.1993); *MBank ElPaso, N.A. v. Sanchez,* 836 S.W.2d 151, 153–54 (Tex.1992); *Sammons v. Broward Bank,* 599 So.2d 1018, 1021 (Fla.Dist.Ct.App.1992); *Massengill v. Indiana Nat'l Bank,* 550 N.E.2d 97, 99 (Ind.Ct.App.1990); *Nichols v. Metropolitan Bank,* 435 N.W.2d 637, 640 (Minn.Ct.App.1989); *General Fin. Corp. v. Smith,* 505 So.2d 1045, 1048 (Ala.1987). Other courts have simply held that a secured creditor can be held liable for the torts of its repossessor even though the repossessor was acting as an independent contractor. *Hester v. Bandy,* 627 So.2d 833, 841–43 (Miss.1993) (holding creditor is liable for torts of repossessing independent contractor so long as torts could reasonably have been anticipated); *Henderson v. Security Nat'l Bank,* 72 Cal.App.3d 764, 140 Cal.Rptr. 388, 390–91 (1977) (holding creditor liable for torts committed by its repossessor even though repossessor was an independent contractor); *Southern Indus. Sav. Bank v. Greene,* 224 So.2d 416, 418 (Fla.Dist.Ct.App.1969) ("[H]aving chosen [the remedy of repossession], the instituting party subjects itself to any liability due to negligence arising in the course of enforcement."). In order to understand how these decisions apply in the present case, the rationales underlying them must be considered.

In ascertaining the nondelegable nature of the duty imposed by U.C.C. § 9–503, courts have looked to two exceptions to the rule that an employer is not liable for the tortious acts of an independent contractor:

> One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of the contractor employed by him to provide such safeguards or precautions.

Restatement (Second) of Torts § 424 (1965).

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

---

**5.** This appears to be an issue of first impression. The parties have cited no U.C.C. § 9–503 cases involving this particular scenario, and the court could find none.

Restatement (Second) of Torts § 427 (1965). Based on these two doctrines, the courts have interpreted U.C.C. § 9–503 as requiring any secured creditor who initiates self-help repossession to take whatever precautions are necessary to ensure that the repossession is executed without a breach of the peace.

The general rule [that an employer is not liable for the tortious acts committed by an independent contractor] is well settled. But this general rule has important exceptions. One is that an employer is responsible for the manner of performance of certain non-delegable duties, though done by an independent contractor. An employer who by contract or law owes a specific duty to another cannot escape liability for a tortious performance by reason of the employment of an independent contractor. . . .

Section 7–9–503 . . . goes farther than merely conferring upon a secured party the power to engage in self-help. It allows the secured party to proceed without judicial process only if that can be done peacefully. . . .

The legislature, in enacting § 7–9–503, *supra,* did not attempt to set out with specificity the safeguards or protections which a secured party must take in order to effect a peaceful repossession. By implication, however, *a secured party is under a duty to take those precautions which are necessary at the time to avoid a breach of the peace.* It is axiomatic that this duty is based on sound public policy.

*General Fin. Corp.,* 505 So.2d at 1047–48 (emphasis added) (relying on Restatement (Second) of Torts §§ 424, 427B) (other citations omitted) (case cited in *McCall*).

A principal generally is not liable for physical harm to another caused by an independent contractor's acts or omissions. However, . . . the Bank may still be liable for Nichols' alleged damages if repossession of the Nichols' automobile by the Bank involved a nondelegable duty or created special risks which were inherent in the contemplated work to be performed . . .

. . . The code requires a secured party to exercise its self-help remedy rights only when repossession can be accomplished "without breach of the peace." The conditional nature of the secured party's self-help remedies and the language of section [9–503] indicate that *a secured party must ensure there is no risk of harm to the debtor and others if the secured party chooses to repossess collateral by self-help methods.* The duty to repossess property in a peaceable manner is intended to protect debtors and other persons affected by repossession activities. Accordingly, a secured party may not delegate to third persons the secured party's duty to repossess in a peaceable manner.

. . . *[Accordingly,] the Bank was obligated to ensure its efforts to repossess the Nichols' car by self-help methods did not create any risk of harm to its debtor.*

*Nichols,* 435 N.W.2d at 640 (emphasis added) (citations omitted) (case cited in *McCall* and expressly adopted in *Sammons v. Broward Bank*).

Both Indiana case and statutory law make it clear that repossession of a secured chattel must be accomplished without breaching the peace. A clear statutory duty is present. . . .

The significance of this, as it relates to the independent contractor rule, is that the contractee, . . ., cannot delegate a statutory duty to an independent contractor and then be released from liability in the event the independent contractor fails to perform that duty. . . . [A] party may have imposed on him by statute *a duty for the safety of third persons* that is not abrogated in the presence of an intervening independent contractor.

*Massengill,* 550 N.E.2d at 99 (emphasis added) (citations omitted).

[W]hen a duty is imposed by law on the basis of concerns for public safety, the party bearing the duty cannot escape it by delegating it to an independent contractor. . . .

A secured creditor certainly has a strong interest in obtaining collateral from a defaulting debtor. That interest, however, must be balanced against society's interest in the public peace. *If a creditor chooses*

*to pursue self-help, it must be expected to take precautions in doing so.* If this burden is too heavy, the creditor may seek relief by turning to the courts. . . .

Because the Bank chose to pursue nonjudicial repossession, it *assumed the risk* that a breach of the peace might occur. . . . Under section 424 of the Restatement (Second) of Torts, the Bank remains liable for breaches of the peace committed by its independent contractor.

*Sanchez,* 836 S.W.2d at 154 (emphasis added) (relying on Restatement (Second) of Torts § 424 and Comment a) (citations omitted) (appellate case cited in *McCall* ).

" '[T]he law devolves upon every one, about to cause something to be done which will probably be injurious to third persons, the duty of providing that reasonable care shall be taken to obviate its probable consequences. In this class of cases, the doctrine of respondeat superior has no application. His liability is based upon the principle that *he cannot set in motion causes dangerous to the person or property of others without taking all reasonable precautions to anticipate, obviate, and prevent their probable consequences.'* . . . 'Even if the relation of principal and agent or master and servant do not, strictly speaking, exist, yet the person for whom the work is done may still be liable if the injury is such as might have been anticipated by him as a probable consequence of the work let out to the contractor . . .' "

*Hester,* 627 So.2d at 842 (emphasis added) (citing *Bonaparte v. Wiseman,* 89 Md. 12, 42 A. 918, 919 (1899)).

■ According to the above cases, breach of peace claims under U.C.C. § 9–503 are analogous to negligence claims involving statutory requirements to take safety precautions (Restatement § 424) or inherently dangerous activities (Restatement § 427). In negligence cases, where a statute or ordinance imposes a duty to take precautions to ensure that an undertaking is performed safely, courts have concluded that the statutory duty is nondelegable, rendering the person upon whom it devolves vicariously liable for the acts of its independent contractor:

[I]f a statute or ordinance requires a person to take certain precautions when work is being done, and such precautions are not taken, it is no defense that an independent contractor was employed to do the work and that the failure to take the precautions was due to the contractor's negligence. . . .

As a general rule, if a statute or municipal ordinance requires one to do a certain thing or to take certain precautions . . . , he cannot delegate such duty to an independent contractor and be released from liability in case the contractor fails to perform it. An exception to the general rule of nonliability of an employer for the negligence of an independent contractor or the latter's servants exists where the employer is under a statutory duty to perform or guard the work.

41 Am.Jur.2d *Independent Contractors* §§ 37–38 (1968).

Similarly, where an undertaking is inherently dangerous, an employer "cannot escape liability for injuries caused by the failure of an independent contractor to exercise due care in the performance of [the] work:"

[A] person who engages a contractor to do work of an inherently dangerous character remains subject to an absolute, nondelegable duty to see that it is performed with that degree of care which is appropriate to the circumstances, or in other words, to see that all reasonable precautions shall be taken during its performance, to the end that third persons may be effectually protected against injury.

41 Am.Jur.2d *Independent Contractors* § 41.

■ Hence, where an employer is required by statute to take certain precautions in performing certain work or seeks the performance of inherently dangerous work, engages an independent contractor to perform that work, and the independent contractor fails to take the necessary precautions resulting in injuries to a third person, the employer is liable even though there is no master/servant relationship between it and the independent contractor. That is, the employer's duty is considered nondelegable and he is held vicariously liable for the independent contractor's failure to take the necessary

precautions: "[T]he employer is answerable for the failure of the independent contractor to take such precautions." 41 Am.Jur.2d *Independent Contractors* § 40. This is so even if the independent contractor's wrongful or negligent acts were unauthorized or forbidden:

> If the case is one in which the law casts upon the employer the duty of seeing that reasonable precautions are taken by the contractor to protect third persons, the fact that a particular act which was the immediate cause of an injury was not necessary, and was not only not authorized but positively forbidden, will not of itself be sufficient to absolve the employer from liability.

*Id.*

█ In this case, under Tenn.Code Ann. § 47–9–503, Associates had a definite statutory obligation to take precautions against a breach of the peace. As stated in *McCall* and the cases quoted *supra*, that obligation was nondelegable; it could not be cast off on anyone else. Thus, when Associates initiated the repossession process by hiring Howard, the duty to take precautions against a breach of the peace remained with Associates. When Howard in turn hired Clark Recovery to carry out the repossession, the duty to take precautions against a breach of the peace still remained with Associates. And when Clark Recovery arranged for its employee, Lett, to actually repossess the tractor-trailer, the duty to take precautions against a breach of the peace still remained with Associates. In short, having initiated the repossession process, it was Associates's affirmative statutory duty to ensure that the repossession was conducted in a peaceable manner, no matter how tenuous the connection between Associates and the ultimate re-

possessor, Lett, may have been. Viewing plaintiff's claim in this manner, it is completely immaterial whether Howard had the authority to hire Clark Recovery or whether Associates knew that Howard had done so. The issue is actually quite simple: If there was a breach of the peace during the course of the repossession, then Associates failed to fulfill its duty under Tenn.Code Ann. § 47–9–503 to ensure no breach of the peace and is liable for any resulting injuries.[6]

█ Thus, the court holds that "[a] creditor cannot escape the duty of peaceable repossession by delegating it to an independent contractor," whether an independent contractor in the first instance or an independent contractor once removed. *Sanchez*, 836 S.W.2d at 153. Holding otherwise would encourage repossessing creditors to simply stack independent contractors between it and the debtor, thereby insulating the creditor from liability.

There are a number of analogous negligence cases involving nondelegable statutory duties or inherently dangerous activities which support the court's holding in this case. *See, e.g., Mydlarz v. Palmer/Duncan Constr. Co.*, 209 Mont. 325, 682 P.2d 695 (1984) (holding that because owner who employed general contractor had a nondelegable statutory duty to take safety precautions, it could be held liable for injuries resulting from the *sub* contractor's failure to take such precautions); *Bialkowicz v. Pan American Condominium No. 3, Inc.*, 215 So.2d 767 (Fla.Dist.Ct.App.1968) (holding owner who employed general contractor liable for negligent act of *sub*contractor because task involved inherently dangerous activities).

---

**6.** Associates argues that "the element of care taken in hiring Bob Howard has an impact on nondelegable duty arguments." (Doc. 145). Associates is mixing up a negligence claim with a claim for violation of a statutory duty. The issue in this case is not whether due care was exercised, but whether a statute was violated. If the statute was violated, then Associates is liable. In this sense, plaintiff's claim against Associates for violation of Tenn.Code Ann. § 47–9–503 is more like a claim of strict liability than a claim of negligence. *See Henderson v. Security Nat'l Bank*, 72 Cal.App.3d 764, 771, 140 Cal.Rptr. 388,

391 (1977) ("Here then is a class of cases in which the tort consists in the breach of what may be called an absolute duty; the act itself ... is unlawful and redressible as a tort.") It is also more like a claim of primary negligence than a claim for secondary or vicarious negligence. *See Oberle v. Hawthorne Metal Products Co.*, 192 Mich.App. 265, 480 N.W.2d 330, 333–34 (1991) (discussing the "confusion" over whether an employer's liability for an independent contractor's failure to take necessary precautions is predicated on the employer's active or passive negligence).

Associates and the third-party defendants cite authority that is completely inapposite. The third-party defendants cite *Equilease Corp. v. Neff Towing Serv.*, 227 Neb. 523, 418 N.W.2d 754 (1988). In *Equilease,* an equipment leasing company (Equilease) sought to repossess some trailers and a tractor from a customer who was in default. Equilease hired a lawyer; the lawyer hired a repossession specialist; and the repossession specialist hired a towing service. The towing service towed away two trailers and stored them. Equilease refused to pay the towing service for the towing and storage on the grounds that the repossession specialist was an independent contractor, not an agent, and was without authority to bind Equilease to a contract with the towing service. The issue was whether the repossession specialist was acting as an authorized subagent of Equilease's lawyer when he engaged and accepted the towing services. This was a simple agency/contract question. No nondelegable statutory duties or inherently dangerous activities were involved.

Associates points to equally inapplicable authority: *In re Alltech Plastics, Inc.,* 71 B.R. 686 (Bankr.W.D.Tenn.1987) and the Restatement (Second) of Contracts § 318. *Alltech* and the Restatement § 318 deal with the issue of the delegability of a duty *created by contract.* There is no such duty at issue in this case. The duty to repossess peaceably is a creation of statute and is nondelegable by virtue of Tennessee case law.

Associates cites a number of cases for the proposition that a master is not liable for the negligence of one selected by his servant without authority from the master. Only one of these cases, however, involves a supposed nondelegable duty:[7] *Dvorak v. Matador Serv., Inc.,* 223 Mont. 98, 727 P.2d 1306 (1986). In that case, Matador delivered a tank truck to Dvorak's employer, Beall, for repairs. *Id.* 727 P.2d at 1307. The tank truck had been used to haul contaminated matter, and Beall was aware of that fact. Beall nevertheless ordered Dvorak to clean out the truck's tank and begin repairs. When Dvorak attempted to do so, he was exposed to toxic substances and suffered injuries. Dvorak then filed suit against Matador. Dvorak claimed that Beall was an independent contractor of Matador and that Matador was vicariously liable for Beall's wrongful acts because cleaning and repairing the tank truck was an inherently dangerous activity. *Id.* at 1307–08. Matador, however, argued that no agency-type relationship existed between it and Beall in the first place. The court agreed, finding that "the underlying agency relationship upon which vicarious liability rests [did] not exist." *Id.* at 1309.

> Matador did not engage Beall to undertake activities on behalf of Matador in Matador's relations with third parties or the public generally. Rather, Matador engaged Beall to perform tasks for Matador, not tasks which Matador had undertaken to perform for others and was delegating to Beall. This is simply not an agency case and no principle of vicarious liability can be applied.

*Id.* In essence, the court found that Matador was Beall's customer, not its agent or independent contractor. This rationale has positively no bearing on the present case in which "the underlying agency relationship upon which vicarious liability rests" does exist. In this case, the defendant *did* engage someone else to undertake activities on its behalf concerning its relationships with third parties.

## B. *Conversion*

■ Associates contends that it is entitled to summary judgment on plaintiff's conversion claim because plaintiff previously elected the remedy of replevin and, since the tractor-trailer has been sold at public auction, that remedy is no longer available. Associates points to a prior Memorandum and Order of the court, reported at 820 F.Supp. 562, denying plaintiff's motion to enjoin Associates from selling the tractor-trailer.

---

7. One of the cases cited by Associates involves a secured creditor's liability for the negligence of a person who the secured creditor's servant, without authorization, enlisted to assist him in a self-help repossession. *White v. Consumers Fin. Serv., Inc.,* 339 Pa. 417, 15 A.2d 142 (1940). That case is pre-U.C.C. and as such does not involve the violation of a nondelegable statutory duty not to breach the peace.

■ In its Memorandum and Order, the court, noting plaintiff's admission that he was in default at the time of the repossession, stated:

The specific violation of the Code that renders this a wrongful repossession is defendant's alleged breach of peace.... [P]laintiff contends that this court has statutory authority to enjoin the sale of collateral that the creditor has wrongfully repossessed by breaching the peace....

... [T]he court is of the opinion that plaintiff must make some showing that he would be entitled to the remedy he seeks—which is replevin—in the event he prevails on his claims. This conclusion is dictated by the terms of K.S.A. § 84–1–106(1),[8] which provides:

The remedies provided by this act shall be liberally administered to the end that the aggrieved party may be put in *as good a position as if the other party had fully performed* but neither consequential or special nor penal damages may be had except as specifically provided in this act or by other rule of law.

(emphasis added). Had defendant "fully performed" in accordance with its duties and not breached the peace, plaintiff would not be entitled to possession of the truck. This follows from plaintiff's concession that he was in default on his payments at the time of the repossession, and apparently remains in default to this day. Thus, allowing plaintiff the remedy of replevin would place plaintiff in a *better* position than if defendant had fully performed.

The loss that plaintiff has suffered as a result of defendant's alleged breach of peace is not the loss of possession of his truck and trailer. Rather, a plaintiff's remedy for a breach of the peace during repossession after default is damages. It is unnecessary to determine at this time the nature of the damages available to plaintiff. For purposes of this motion, the court decides only that plaintiff would not be entitled to possession of the collateral even if he prevails on his claim that defendant wrongfully repossessed by breaching the peace.

820 F.Supp. at 564–65 (citations omitted). Hence, the court concluded that the tractor-trailer was not repleviable, but the court expressly withheld ruling on the "nature of the *damages* available to plaintiff." *Id.* at 565 (emphasis added). Such "damages" included those to which plaintiff may be entitled under a conversion theory.[9]

Associates asserts an "election of remedies" argument in support of its motion for summary judgment on plaintiff's conversion claim. Associates contends that plaintiff should not be allowed to first seek recovery under a replevin theory and then, having been told he is not entitled to such recovery, bring a claim for conversion. While the court agrees that a plaintiff cannot simultaneously maintain an action for both conversion and replevin as double recovery could result, in light of the well established rule that a creditor who breaches the peace is liable to the debtor for conversion, the court believes plaintiff should be allowed to pursue a conversion theory in the present case. The court does not view plaintiff's original choice to pursue replevin instead of conversion as a final and irrevocable election. The Tennessee Supreme Court has stated:

"The purpose of the doctrine of the election of remedies is not to prevent recourse to any remedy but to prevent double redress for a single wrong.... Dismissal of one or release of the other, in the absence

---

8. K.S.A. § 84–1–106(1) is identical to Uniform Commercial Code § 1–106(1) and appears in the Tennessee Code at § 47–1–106(1).

9. "Generally, when the creditor, by self-help, repossesses the collateral by a breach of peace, the creditor is liable for trespass and conversion." 68A Am.Jur.2d *Secured Transactions* § 622.
 [T]he debtor may recover the value of his equity in the collateral. That is, when the creditor is liable for conversion in connection with the repossession of the collateral, the measure of

damages is the reasonable value of the collateral at the time of the conversion less the amount of the debt owed the creditor plus legal interest to the date of the verdict.
68A Am.Jur.2d *Secured Transactions* § 620. This is the rule even if the debtor was in default. In *McCall*, for example, the debtor, though plainly in default, was allowed to pursue recovery for conversion from the repossessing creditor because the creditor had breached the peace. 820 S.W.2d at 751–52.

of prejudice to the adverse party, puts the whole matter in statu quo. It is no final choice, and so no election of remedies."

*Barger v. Webb,* 216 Tenn. 275, 281, 391 S.W.2d 664, 667 (1965) (quoting *First Nat. Bank of Osakis v. Flynn,* 190 Minn. 102, 250 N.W. 806 (1933)). The court perceives no prejudice to Associates in allowing plaintiff to pursue recovery on a conversion theory, regardless of plaintiff's initial election to pursue replevin.

## C. *Punitive Damages*

■ Associates contends that it is entitled to summary judgment on plaintiff's claim for punitive damages because the policies underlying the availability of such damages—punishment and deterrence—would not be served by a punitive damages award in this case. *See Davenport v. Chrysler Credit Corp.,* 818 S.W.2d 23 (Tenn.App.1991) (holding, in a breach of peace case, that "punitive damages are intended to serve as a financial penalty to deter similar acts in the future"). The court finds no merit in this argument. A substantial award of punitive damages would serve to punish Associates for allowing a breach of peace to occur and would hopefully motivate Associates to take added precautions to prevent future violent repossessions. Moreover, as the court previously stated, in its June 7 Memorandum and Order:

> [P]laintiff has stated a viable claim for punitive damages. If the repossession was effected through a breach of peace, and in a manner sufficiently egregious under Tennessee law, a jury would have the discretion to assess punitive damages against Associates irrespective of third-party defendants' status as agents or independent contractors.

149 F.R.D. at 637. *See McCall,* 820 S.W.2d at 752 ("Compensatory and punitive damages are recoverable."); 68A Am.Jur.2d *Secured Transactions* § 621 ("[I]f the circumstances surrounding the unlawful repossession can be characterized as 'outrageous' or 'malicious' the debtor may recover punitive as well as compensatory damages.").

## D. *No Breach of Peace Prior to Physical Altercation*

■ Finally, Associates seeks an order of summary judgment that no breach of peace occurred at any time prior to the point of physical contact between plaintiff and Lett. Associates contends that a breach of peace must involve violence or a threat of violence and that no violence occurred before plaintiff and Lett's physical altercation began.

Current Tennessee case law has muddied the waters on whether a plaintiff must show that the repossessor engaged in violent conduct in order to prove a "breach of peace" within the meaning of Tenn.Code Ann. § 47–9–503. In *McCall,* 820 S.W.2d at 751, the *Eastern* Section of the Court of Appeals of Tennessee stated that violence or a threat thereof must be involved for there to be a breach of peace. The court relied on a prior decision of the *Western* section of the Court of Appeals, *Harris Truck & Trailer Sales v. Foote,* 58 Tenn.App. 710, 436 S.W.2d 460 (1968). However, in a prior but relatively contemporaneous case, *Davenport v. Chrysler Credit Corp.,* 818 S.W.2d 23, 28 (Tenn. App.1991), the *Middle* Section of the Court of Appeals of Tennessee rejected *Harris Truck & Trailer:*

> We have determined that the *Harris* court improperly narrowed the scope of Tenn.Code Ann. § 47–9–503 by requiring that a repossession be accompanied by violence or a threat of violence in order to be considered a breach of the peace. Its interpretation of "breach of peace" is inconsistent with the common law and with the Supreme Court's earlier interpretations of the term.
>
> The term "breach of peace" is a generic term that includes all violations or potential violations of the public peace and order. It includes all unlawful acts and acts of public indecorum that disturb or tend to disturb the public peace or good order.

(citations omitted). The *Davenport* court held that "neither violence, the threat of violence, nor personal confrontation is necessary in order for a secured party's conduct to amount to a breach of peace under Tenn. Code Ann. § 47–9–503" and that "[d]etermining whether a particular secured creditor's

conduct amounts to a breach of peace requires a review of the reasonableness of the secured party's conduct in light of the facts of the case." *Id.* at 29. Rather amazingly, there is no mention of *Davenport* in *McCall.*

The parties take different views of *Davenport* and *McCall* and their affect on the present case. Associates argues that because the incident leading to this § 9–503 action, like the incident leading to the § 9–503 action in *McCall,* occurred in a geographic area covered by the Eastern Section of the Tennessee Court of Appeals and involved a personal confrontation between the debtor and someone acting on behalf of the creditor, this case is governed by the rule from *Harris Truck & Trailer.* Plaintiff, by contrast, contends that the *McCall* and *Davenport* decisions are "completely harmonious and there is no need to choose between the two in deciding what constitutes a 'breach of peace' in Tennessee." (Doc. 150, p. 13).

The court finds that the rule from *McCall* and *Harris Truck & Trailer,* requiring the debtor to show violent conduct on the part of the repossessor, applies in this case. *Davenport* is inapposite. In *Davenport,* there was no personal confrontation or violence. Rather, someone acting on behalf of the creditor entered the debtor's garage, cut a padlock, and removed his automobile while the debtor was not at home. 818 S.W.2d at 30. The present case involves a personal confrontation and an alleged offense against an individual. The *Davenport* court distinguished such offenses: "Offenses against individuals, generally criminal offenses, must be accompanied by violence or a threat of violence in order to be considered a breach of peace." *Id.* at 29. That is, the court made a distinction between "offenses against individuals"—like that in *McCall*—and "offenses against the public at large or the State"—like that in *Davenport. Id.* The court perceives no "offense against the public at large" in the present case. Hence, it is entirely consistent with *Davenport* to apply the rule from *McCall* to this case and to hold that, in order to show a breach of peace, plaintiff must prove that the repossessor, Lett, engaged in violence or threats of violence.

 Having found that the rule from *McCall* is controlling, the court looks to plaintiff's evidence that Lett engaged in violent conduct *before* their physical altercation began. In the court's view, a genuine and material issue of fact remains. Although plaintiff has conceded that he initiated the physical contact, plaintiff has also testified that Lett dared plaintiff to try and remove him from the truck and threatened to have plaintiff arrested. (Plaintiff's Depo., Doc. 127, Ex. 23, pp. 30, 224). Because these statements could be considered threats of violence, Associates motion for summary judgment on this issue must be denied.

**IT IS ACCORDINGLY ORDERED** that defendant Associates Commercial Corporation's motion for summary judgment (Doc. 146) is in all respects denied. Plaintiff Arnold R. Clark's motion for partial summary judgment (Doc. 126) is granted in part—Associates's duty not to breach the peace is, under Tennessee law, nondelegable—and denied in part—the issue of ratification under Kansas law is irrelevant. Plaintiff's motion for Rule 11 sanctions is denied.

Motions for reconsideration of this order are not encouraged. Should any such motion be filed, it and any response thereto shall be limited to 5 pages, including attachments. No reply memorandum shall be filed.