1998 OK 14

Jim WILLIAMSON, d/b/a Williamson Auto, Appellee,

v.

FOWLER TOYOTA, INC., Appellant.

No. 84904.

Supreme Court of Oklahoma.

Feb. 24, 1998.

Rehearing Denied April 21, 1998.

Jeff Belote, Gotcher & Belote, McAleste, for Appellee.

Gary s. Pitchlynn, Patrick A. Morse, Pitchlynn, Morse, Ritter & Morse, Norman, for Appellant.

ALMA WILSON, Justice:

¶ 1 The issue is whether a creditor is liable for the trespass and the resulting damages caused by an independent contractor employed by the creditor to repossess secured collateral pursuant to 12A O.S.1991, § 9–503. We hold that the statute creates a nondelegable duty on the creditor to refrain from breaching the peace when repossessing secured collateral, and therefore the creditor is liable for any breach of the peace by the independent contractor. We also hold that

the independent contractor's wanton and reckless disregard of the property rights of another may be imputed to the employer and exemplary damages awarded pursuant to 23 O.S.1991, § 9.[1]

## FACTS

¶ 2 The basic facts in this matter are uncontested. Fowler Toyota, Inc., (Fowler) sold a 1982 Chevrolet Chevette to Robert Gilmore on January 20, 1993, for $3,042.50. Gilmore paid $300.00 down, and agreed to twenty-one bi-weekly payments of $125.00, and one final payment of $117.50 to be paid on December 26, 1993. Gilmore also gave Fowler a security interest in the Chevette. Gilmore became ill and subsequently died from his illness. Sometime during his illness, Gilmore donated the car to Camp Hudgens but stopped making payments on the Chevette. The caretaker of Camp Hudgens took the car to Williamson, located north of McAlester, Oklahoma, to examine it and assure the car was safe to sell. Williamson had no knowledge of any lien on the Chevette, nor did he know that Fowler had declared Gilmore to be in default and had hired Clint McGregor to repossess the Chevette.

¶ 3 Williamson testified that the Chevette was in his possession about thirty days. On October 10, 1993, he came to work and observed that his gate was open and that the lock and chain he customarily attaches and which he had locked the night before were both missing. He checked the premises to determine what, if anything, had been taken, and discovered that the Chevette was gone. He called the police, who came to investigate. Within a couple of hours, the police told Williamson that the car had been repossessed by Fowler Toyota of Norman, Oklahoma.

¶ 4 Clint McGregor repossesses automobiles for Fowler Toyota and other automobile dealers. He was hired to repossess the Chevette, but was not told its location. He discovered that the car was at Williamson Auto from one of Gilmore's relatives. McGregor testified that he learned where the Chevette

**1.** Jury trial was held on October 27, 1994, and the verdict awarded punitive damages on the same day. Section 9 of title 23 was repealed by

1995 Okla.Sess.Laws, ch. 237, § 4, and replaced by § 9.1, 1995 Okla.Sess.Laws, ch. 237, § 2, effective August 25, 1995.

was located after dark, and then drove to McAlester. He found Williamson Auto, and testified that he called the phone number listed on the building, but received no answer. He found the gate to Williamson Auto locked with a chain which he cut with bolt cutters. McGregor testified that he regularly carried bolt cutters and still carried them at the time of the trial. McGregor then entered the lot, pushed the Chevette out and towed it to Norman. He testified that before he left McAlester, he contacted the police to inform them that he had repossessed the Chevette.

¶ 5 When he turned the Chevette over to Fowler for his fee, he told them what he had done to repossess the vehicle. Neither he nor Fowler attempted to contact Williamson Auto. Fowler told McGregor not to trespass to repossess automobiles in the future. Fowler eventually sold the Chevette. Fowler still uses McGregor to repossess vehicles.

¶ 6 Williamson estimated his losses at $15.00 for the lock and chain, and $30.00 (one hour) of billable time. He sued Fowler and was awarded $45.00 in actual damages, and $15,000.00 in punitive damages. The Court of Civil Appeals reversed, and we have previously granted certiorari.

## EMPLOYER'S LIABILITY FOR TORTIOUS ACTS OF INDEPENDENT CONTRACTOR

█ ¶ 7 Fowler asserts that it is not liable for the actions of McGregor, because he was an independent contractor. Fowler maintains it had no prior knowledge that McGregor intended to break into Williamson Auto to retrieve the Chevette, and that when Fowler was told of his actions, the company expressed its disapproval and informed him that he was not to repeat the activity. In support of its argument that it is not liable for McGregor's actions, Fowler cites *Hudgens v. Cook Industries, Inc.,* 1973 OK 145,

¶ 11, 521 P.2d 813, for the general rule that an employer is not liable for the torts of an independent contractor. But more fully stated, *Hudgens* provides:

"The rule in Oklahoma is that a person who performs work through an independent contractor is not liable for damages to third persons caused by the negligence of the contractor except where the work is inherently dangerous or unlawful or where the employer owes a contractual or defined legal duty to the injured party in the performance of the work." [Citations omitted.]

*Hudgens,* 1973 OK 145, ¶ 11, 521 P.2d 813. *Hudgens* was a negligence case. The rule stated in *Hudgens* includes an exception for work that is inherently dangerous or unlawful or where the employer owes a contractual or defined legal duty to the injured party in the performance of the work.

¶ 8 Fowler argues that it does not fall within the exceptions to the general rule that an employer is not liable for the torts of an independent contractor. Fowler cites 12A O.S.1991, § 9-503 [2] in support of its reasoning that since creditors are expressly granted the right by statute to repossess collateral, the work of repossessing an automobile cannot be held to be inherently dangerous. But in fact, other jurisdictions have held precisely the opposite.

¶ 9 One such case is *Hester v. Bandy,* 627 So.2d 833 (Miss.1993). In this case involving the repossession of a 1982 Ford van, the Supreme Court of Mississippi held that "when one employs another to perform a task in which a serious danger to person or property, a crime, or some tort can reasonably be anticipated in its performance, it is no defense to say the act causing the harm was committed by an independent contractor." *Hester,* 627 So.2d at 843. In reaching its conclusion, the *Hester* court construed its

---

**2.** Title 12A O.S.1991, § 9-503 provides: "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under Section 9-504."

§ 9–503 from the Uniform Commercial Code. *Hester*, 627 So.2d at 836, citing Miss.Code Ann. § 75–9–503 (Supp.1992). The court observed that under the statute the secured party had a right to take possession of the vehicle without any judicial process if it could be done without breach of the peace. *Hester*, 627 So.2d at 840.

¶ 10  The facts of *Hester* reveal that after moving a car to get to the van, the repossessor, an independent contractor, took the van out of the debtor's driveway at 3:00 in the morning. When the debtor went outside to see what was happening, he saw two men attaching a "quick snatch harness" from a truck to the van, and he began yelling at them. In pursuing them as they left, he fell into a ditch and was injured.

¶ 11  Considering whether or not the independent contractor had committed a tort, the Mississippi court held that the tactic chosen by the repossessor guaranteed generating fright or anger, or both, if discovered in progress by the Hesters, and was therefore fraught with the peril of provoking a breach of the peace of the most serious kind. The court continued that when the debtor attempted to physically resist the repossession, this terminated the right of the repossessor to continue, because in doing so he caused a breach of the peace, and he committed a tort. *Hester*, 627 So.2d at 841.

¶ 12  After concluding that the repossessor had committed a tort, the Mississippi court determined whether the secured party was liable for the tort of the independent contractor. Mississippi's rule is the same as Oklahoma's, that one is not liable for the torts of an independent contractor unless the work or service is illegal, dangerous or harmful. *Hester*, 627 So.2d at 841. But the Mississippi court quoted *Bonaparte v. Wiseman*, 89 Md. 12, 42 A. 918 (1899), that one who is about to cause something to be done that will probably be injurious to third persons is liable based upon the principle that he cannot set in motion causes that are dangerous to the person or property of others without taking all reasonable precautions to anticipate, obviate, and prevent their probable consequences. *Hester*, 627 So.2d at 842. The question as to whether injury might reasonably have been anticipated as a probable consequence was a question of fact for the jury. *Hester*, 627 So.2d at 842. The Mississippi court, using the same Uniform Commercial Code statute as Oklahoma's, and the same common law rule as Oklahoma's concerning liability for independent contractors, reached the opposite conclusion as that espoused by Fowler.

¶ 13  In *Clark v. Associates Commercial Corp.*, 877 F.Supp. 1439 (D.Kan.1994), a case citing and quoting from *Hester*, the United States District Court discussed the current state of the law in the various jurisdictions throughout the United States concerning vicarious liability of secured creditors in using independent contractors to repossess motor vehicles. The United States District Court in Kansas found it must apply Tennessee law, since that is where the repossession took place. The Tennessee law required the secured party to repossess peaceably and found the duty to be non-delegable. Therefore a secured party in Tennessee is vicariously liable for wrongful acts of a repossessor even if the repossessor is an independent contractor. *Clark*, 877 F.Supp. at 1443, citing *McCall v. Owens*, 820 S.W.2d 748, 751–52 (Tenn.Ct. App.1991). The United States District Court observed that a number of courts had held that the duty to repossess peaceably under U.C.C. § 9–503 was nondelegable.[3] The court continued that other courts have simply held that a secured creditor can be held liable for the torts of its repossessor even though the repossessor was acting as an independent contractor.[4]

¶ 14  Oklahoma's Uniform Commercial Code provides for self-help repossession by a

**3.**  The *Clark* case cites: *James v. Ford Motor Credit Co.*, 842 F.Supp. 1202 (D.Minn.1994); *Nixon v. Halpin*, 620 So.2d 796, 798 (Fla.Dist.Ct.App. 1993); *MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 153–54 (Tex.1992); *Sammons v. Broward Bank*, 599 So.2d 1018, 1021 (Fla.Dist. Ct.App.1992); *Massengill v. Indiana Nat'l Bank*, 550 N.E.2d 97, 99 (Ind.Ct.App.1990); *Nichols v. Metropolitan Bank*, 435 N.W.2d 637, 640 (Minn.

Ct.App.1989); *General Fin. Corp. v. Smith*, 505 So.2d 1045, 1048 (Ala.1987). *Clark*, 877 F.Supp. at 1445.

**4.**  The United States District Court in *Clark* cited the following cases with the following summaries of the cases: *"Hester v. Bandy*, 627 So.2d 833, 841–43 (Miss.1993) (holding creditor is liable for torts of repossessing independent contractor so

secured party provided the repossession is accomplished without breach of the peace. In construing the same section in Alabama's Uniform Commercial Code, the Supreme Court of Alabama considered what constituted breach of the peace. The court, after citing the Restatement .(Second) of Torts § 183 (1965), comment h, observed that under the Restatement principle, the use of force, such as breaking or removing a padlock, does not comport with concepts of reasonableness and peaceableness, and was therefore a violation of the prohibition in the Uniform Commercial Code.[5]  *Madden v. Deere Credit Services, Inc.,* 598 So.2d 860, 865 (Ala.1992). The court concluded that when collateral is located inside fences or is otherwise enclosed, the secured creditor's privilege is considerably abridged. *Madden,* 598 So.2d at 866, citing *Rogers v. Allis–Chalmers Credit Corp.,* 679 F.2d 138 (8th Cir.1982). The court continued that the creditor's privilege is most severely restricted when repossession can be accomplished only by the actual breaking or destruction of barriers designed to exclude intruders, and gave as an example cutting a chain used to lock a fence that enclosed the debtor's property. *Madden,* 598 So.2d at 866, citing *Laurel Coal Co. v. Walter E. Heller & Co.,* 539 F.Supp. 1006 (W.D.Pa.1982), and *Bloomquist v. First National Bank of Elk River,* 378 N.W.2d 81 (Minn.App.1985). The court concluded that the potential for breaches of the public peace and tranquility as a result of unauthorized intrusions on property escalates in direct proportion to the presence of fences, gates, signs, and other indicia of nonassent to entry. *Madden,* 598 So.2d at 867.

■ ¶ 15 McGregor cut a chain locking the gate to Williamson Auto and entered

without the permission of the owner. Trespass involves an actual physical invasion of the real estate of another without the permission of the person lawfully entitled to possession. *Fairlawn Cemetery Ass'n v. First Presbyterian Church,* 1972 OK 66, ¶ 14, 496 P.2d 1185. Stated another way, a trespasser is one who enters upon the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in the performance of any duty to the owner or person in charge or on any business of such person, but merely for his own purposes, pleasure, or convenience, or out of curiosity. *Texas–Louisiana Power Co. v. Webster,* 127 Tex. 126, 134, 91 S.W.2d 302, 306 (1936), *Holder v. Mellon Mortgage Co.,* 954 S.W.2d 786, 796 (Tex.Ct.App.1997). The trial court in the case at bar gave the jury instructions on both trespass and breach of the peace, and the jury found for the plaintiff.

■ ¶ 16 The right of self help that belongs to the creditor is not transferable to another and the creditor's duty to exercise this right in a peaceable manner is not delegable. We are persuaded to agree with the jurisdictions that have construed the Uniform Commercial Code, and the common law rule, as stated in *Hudgens,* to hold that in the repossession of secured collateral, the secured party has a nondelegable duty to repossess the secured collateral without breach of the peace. Fowler is therefore liable for McGregor's trespass and breach of the peace.

## RATIFICATION OF ACTS OF REPOSSESSING AGENTS

¶ 17 The trial court instructed the jury that if Fowler accepted the repossessed auto-

long as torts could reasonably have been anticipated); *Henderson v. Security Nat'l Bank,* 72 Cal.App.3d 764, 140 Cal.Rptr. 388, 390–91 (1977) (holding creditor liable for torts committed by its repossessor even though repossessor was an independent contractor); *Southern Indus. Sav. Bank v. Greene,* 224 So.2d 416, 418 (Fla. Dist.Ct.App.1969) ('[H]aving chosen [the remedy of repossession], the instituting party subjects itself to any liability due to negligence arising in the course of enforcement.').'' *Clark,* 877 F.Supp. at 1445.

**5.** The Restatement comment provides: "h. Use of force. The privilege stated in this Section is one of entry in a peaceable and reasonable manner to remove the thing from the land. It does not justify the use of any force to enter, to remove the thing, or to prevent interference by the possessor. Since the conditional seller or other actor has parted freely and voluntarily with his original possession, he is not privileged to recover it by force, and must resort to his remedy at law. Compare § 101 and Comments. The actor will therefore be liable if he breaks and enters the land, as by removing a padlock."

mobile with knowledge that McGregor cut the chain and removed the lock in order to gain access to Williamson Auto, that the jury could find that Fowler had ratified the acts of McGregor, and were liable as though Fowler had committed the acts or gave McGregor specific authority to do so. This instruction was apparently based on *Henry v. Carpenter,* 1961 OK 253, 366 P.2d 928, which holds: "Where a master with full knowledge of the wrongful acts of his servant, accepts the benefits derived from the servant's conduct by retaining an article which he took from another, master thereby ratifies the acts of the servant, and becomes liable as though authority had been given." *Henry,* 366 P.2d at 930. Fowler argues that *Henry* does not apply because the case involved an employer-employee relationship, and Williamson argues that *Henry* does apply because the same rationale supporting the holding in that case applies to employer-independent contractor relationships. Although we do not find error in the trial court's instruction, this Court is holding as a matter of law that a secured creditor is under obligation to preserve the peace whether an employee or an independent contractor is repossessing the collateral on behalf of the creditor. The duty to preserve the peace is nondelegable.

## PUNITIVE DAMAGES

¶ 18 Fowler argues that the trial court erred in instructing the jury on punitive damages, and by further authorizing the jury to award damages in excess of the actual damages suffered. The punitive damages statute found in title 23, § 9, was amended in 1995.[6] Prior to 1995, § 9 provided:

"A. In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant, in an amount not exceeding the amount of actual

damages awarded. Provided, however, if at the conclusion of the evidence and prior to the submission of the case to the jury, the court shall find, on the record and out of the presence of the jury, that there is clear and convincing evidence that the defendant is guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, then the jury may give damages for the sake of example, and by way of punishing the defendant, and the percentage limitation on such damages set forth in this section shall not apply.

"B. The provisions of this section shall be strictly construed."

¶ 19 The trial court found, on the record and out of the presence of the jury by clear and convincing evidence that the conduct of McGregor evinced a wanton and reckless disregard for the rights of another, and was oppressive. The court then removed the percentage limitation on punitive damages, and after instruction from the court, the jury returned a verdict for punitive damages in the amount of $15,000.00. The pre–1995 version of § 9 reflected what had long been the law, that punitive damages are allowable when there is evidence of reckless and wanton disregard of another's rights. *Mitchell v. Ford Motor Credit,* 1984 OK 18, ¶ 8, 688 P.2d 42. In *Mitchell,* the jury awarded punitive damages in the amount of $60,000.00 after an award for actual damages of $843.74. *Mitchell,* 1984 OK at ¶ 3, 688 P.2d 42. The Court found that the award was far from excessive when considered in light of the facts adduced and the creditor's disclosed net worth. *Mitchell,* 1984 OK at ¶ 10, 688 P.2d 42. In cutting the lock off a gate of an auto-mechanic's shop belonging to Williamson, who had no relationship to the security agreement between Fowler and the debtor, Gilmore, McGregor certainly showed complete disregard for the rights of Williamson in securing his place of business. As we have held, Fowler's duty not to breach the peace when repossessing vehicles is nondele-

---

6. 1995 Okla.Sess.Laws, ch. 287, § 2, currently codified as 23 O.S.Supp.1997, § 9.1, would, under similar facts to that of the case at bar, limit punitive damages to $100,000.00. The jury, in-

stead of the trial judge, would have to find by clear and convincing evidence that the defendant has been guilty of reckless disregard for the rights of others.

gable, and so Fowler is vicariously liable even for punitive damages for McGregor's actions. This properly places the responsibility on the secured creditor to make sure the party it hires acts within the law in repossessing collateral. Because some evidence was presented that Fowler's worth was in excess of $3,000,000.00, and Williamson asked the jury to award $30,000.00 in punitive damages, an award of $15,000.00 is certainly not excessive.[7]

## ATTORNEY'S FEE AND COSTS

¶ 20 Williamson was awarded an attorney's fee and costs in the amount of $5,305.00. Fowler admits that an attorney's fee is permitted to the prevailing party in this case pursuant to 12 O.S.1991, § 940.[8] The record reveals that Fowler did not contest Williamson's motion. Accordingly, we find no error.

¶ 21 CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; JUDGMENT OF THE TRIAL COURT IS AFFIRMED.

HODGES, LAVENDER, OPALA, ALMA WILSON and WATT, JJ., concur.

KAUGER, C.J., and SIMMS, J., concur in part; dissent in part.

SUMMERS, V.C.J., and HARGRAVE, J., dissent.

SIMMS, Justice, concurring in part, dissenting in part:

I would remit 50% of the punitive damages award.

---

7. "When a defendant's conduct is such as to amount to fraud, oppression or malice, or the act is wilfully and wantonly done with criminal indifference to the plaintiff's rights, exemplary damages are allowable. And, in such an action these damages are peculiarly within the province of the jury, whose verdict will not be interfered with lightly upon the claim of excessiveness." *Oller v. Hicks,* 1967 OK 240, ¶ 13, 441 P.2d 356 (1967).

8. 12 O.S.1991, § 940 provides in pertinent part: "A. In any civil action to recover damages for the negligent or willful injury to property and any other incidental costs related to such action, the prevailing party shall be allowed reasonable attorney's fees, court costs and interest to be set by the court and to be taxed and collected as other costs of the action."